STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas J. QUEEVER, Defendant-Appellant.†

Court of Appeals

*No. 2015AP2320–CR. Submitted on briefs September 13, 2016.
—Decided October 21, 2016.*

2016 WI App 87

(Also reported in 887 N.W.2d 912.)

† Petition for Review Filed.

389

[black redaction bars]

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dennis Schertz* of *Schertz Law Office*, Hudson.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Scott E. Rosenow*, assistant attorney general.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. Thomas Queever appeals from the restitution component of a judgment convicting him of attempted burglary of a building or dwelling. The circuit court ordered Queever to pay restitution to the victim for the expense she incurred to install a home security system. Queever contends the court erred by ordering restitution in that amount because the victim purchased the security system before the attempted break-in that gave rise to his conviction. We conclude the court properly exercised its discretion when it determined there was a causal nexus between

the cost of the security system and the crime considered at Queever's sentencing. We therefore affirm.

## BACKGROUND

¶ 2. Money went missing from the eighty-six-year-old victim's purse on multiple occasions, and on one occasion her entire purse vanished. The victim and her family initially thought that she might be confused or that her memory was slipping. Eventually, however, the victim's family began to suspect that someone was entering her home at night and stealing money from her purse. The victim's son installed a hidden video camera inside her home in attempt to catch the thief.

¶ 3. In December 2013, the victim again noticed money was missing from her purse. She reviewed the video camera's footage from the previous night, which showed a man with "longer hair and a larger body build" entering her home through a sliding glass door shortly before midnight. The victim reported this burglary to the police, who then installed a second video camera inside her home.

¶ 4. In April 2014, the victim once again realized money was missing from her purse. She reported the burglary to the police. The video footage from the previous night showed a man attempting to enter the victim's home shortly before midnight through the same sliding glass door. The footage subsequently showed the man inside the victim's home. Police determined the man likely entered the victim's home that night through an unlocked window.

¶ 5. Because the footage from the two cameras was not clear enough for the police to determine the burglar's identity, in July 2014, the victim paid to have

a security system installed in her home. The system included an alarm on the sliding glass door and a camera next to that door.

¶ 6. Just before midnight on August 5, 2014, the victim received a call from the company that had installed her security system advising her the alarm on her sliding glass door had been triggered. A police officer later reviewed the footage from the security system's camera. That footage showed a gloved man with a flashlight approaching the sliding door; tampering with the security camera, which looked like an outdoor yard light; attempting to open the sliding door; and then turning the security camera in a different direction. The officer recognized the man in the video as Queever. The officer later showed Queever still-frame photographs from the video, and Queever admitted he was the man depicted in those photographs.

¶ 7. As a result of the August 5, 2014 attempted break-in, the State charged Queever with one count of attempted burglary of a building or dwelling, as a repeater. Pursuant to a plea agreement, Queever pled no contest to the charged offense, without the repeater enhancer.

¶ 8. Prior to sentencing, the victim requested $2,495 in restitution—the amount she had paid to have her home security system installed. At the sentencing hearing, Queever objected to the victim's restitution request, arguing she was not entitled to recoup the cost of the security system because she purchased it before the conduct underlying his conviction—namely, the August 5, 2014 attempted burglary. Defense counsel explained:

> Everything I've heard says that this system was installed because of the alleged burglaries that occurred some date prior in time to that . . . July 1st date. The obvious implication is, from the letters I've received

from Victim Impact Statements, through the PSI, the implication from the State is that Mr. Queever is the one who is allegedly responsible for those prior break-ins. He's denied responsibility for those. . . . He's not been found guilty of any prior offense to that date. He's not been held legally responsible [for the prior break-ins] in any way. There's no cause of Mr. Queever's that led to [the victim] installing this system.

¶ 9. The circuit court rejected defense counsel's argument. First, the court found by a "preponderance of the evidence" that Queever had entered the victim's home multiple times before the attempted burglary for which he was being sentenced. Second, the court found that the victim paid to have the security system installed as a result of those prior break-ins. The court therefore ordered Queever to pay $2,744.50 in restitution—the cost of the security system, plus a restitution surcharge of $249.50. Queever now appeals from his judgment of conviction, challenging only the circuit court's restitution award.

## DISCUSSION

¶ 10. Criminal restitution is governed by Wis. Stat. § 973.20.[1] The statute provides, in relevant part:

When imposing sentence or ordering probation for any crime . . . for which the defendant was convicted, the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing . . . unless the court finds substantial reason not to do so and states the reason on the record.

Sec. 97.20(1r).

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

■

¶ 11. The statutory term "crime considered at sentencing" means "any crime for which the defendant was convicted and any read-in crime." Wɪs. Sᴛᴀᴛ. § 973.20(1g)(a). Before a court may order restitution, a "causal nexus" must be established between the "crime considered at sentencing" and the victim's alleged damage. *State v. Canady*, 2000 WI App 87, ¶ 9, 234 Wis. 2d 261, 610 N.W.2d 147. "In proving causation, a victim must show that the defendant's criminal activity was a 'substantial factor' in causing damage." *Id.* "The defendant's actions must be the 'precipitating cause of the injury' and the harm must have resulted from 'the natural consequence[s] of the actions.' " *Id.* (quoting *State v. Madlock*, 230 Wis. 2d 324, 333, 602 N.W.2d 104 (Ct. App. 1999)).

■

¶ 12. A circuit court has discretion to determine "whether the defendant's criminal activity was a substantial factor in causing any expenses for which restitution is claimed." *State v. Johnson*, 2005 WI App 201, ¶ 10, 287 Wis. 2d 381, 704 N.W.2d 625. A court properly exercises its discretion when it logically interprets the facts, applies a proper legal standard, and uses a rational process to reach a reasonable conclusion. *Id.*

¶ 13. Queever argues the circuit court erroneously exercised its discretion in this case by determining there was a causal nexus between the crime considered at sentencing and the cost the victim incurred to install a home security system. We disagree. During the sentencing hearing, the circuit court made two factual findings in support of its determination that the requisite causal nexus existed. Neither of those findings is clearly erroneous. *See State v. Ander-*

*son*, 215 Wis. 2d 673, 677, 573 N.W.2d 872 (Ct. App. 1997) (citing Wɪs. Sᴛᴀᴛ. § 805.17(2)) (applying clearly erroneous standard of review to circuit court's factual findings regarding restitution).

¶ 14. First, the circuit court found by a "preponderance of the evidence" that Queever had broken into the victim's home multiple times before the August 5, 2014 attempted burglary for which he was convicted and sentenced. This finding is not contrary to the great weight and clear preponderance of the evidence. *See Phelps v. Physicians Ins. Co.*, 2009 WI 74, ¶ 39, 319 Wis. 2d 1, 768 N.W.2d 615 (circuit court's factual finding is clearly erroneous when contrary to the great weight and clear preponderance of the evidence).

¶ 15. During the sentencing hearing, the State introduced two videos from the April 2014 burglary into evidence, as well as one video and two still-frame photographs from Queever's August 5, 2014 attempted burglary. A comparison of these exhibits supports the circuit court's finding that Queever was also responsible for the April 2014 burglary. One of the April 2014 videos briefly captured a relatively discernible profile view of the burglar's face, mullet haircut, and baseball cap. The video from the August 5, 2014 attempted burglary contains similar profile views of Queever's face and shows him wearing a mullet haircut and baseball cap. In addition, the August 2014 video shows that Queever's build is similar to that of the man in the April 2014 video, and they have the same dominant hand.

¶ 16. The record also reflects that Queever attempted to enter the victim's home in August 2014 through the same sliding glass door that was the entry point or attempted entry point in the December 2013 and April 2014 burglaries. Each of these incidents occurred shortly before midnight. Moreover, as one of

the victim's friends noted during the sentencing hearing, money stopped disappearing from the victim's purse after Queever was arrested. On this record, the circuit court could reasonably find that Queever was responsible for the prior burglaries of the victim's home.[2]

¶ 17. Second, the circuit court concluded the prior burglaries caused the victim to purchase the home security system. At the beginning of the sentencing hearing, the State asserted, among other things, that the victim's family had installed the security system because the video footage of the previous burglaries was not clear enough to identify the burglar. Defense counsel stipulated to the State's summary of the facts. Later on during the hearing, one of the victim's daughters confirmed that the earlier videos "did not get a clear picture of [the burglar's] face, so we took it one step further and installed a complete security system." Several letters submitted to the circuit court by other family members also connected the installation of the security system to the prior burglaries. The circuit court's finding that the prior burglaries caused the victim to install the security system is therefore not clearly erroneous.

¶ 18. In addition, as the previous paragraph shows, the victim purchased the security system to identify the person who was burglarizing her home. Queever was identified as the perpetrator of the Au-

---

[2] Although the State conceded at sentencing it could not prove beyond a reasonable doubt that Queever was responsible for the prior burglaries, the circuit court concluded by a "preponderance of the evidence" that Queever had committed those crimes. *See* WIS. STAT. § 973.20(14)(a)-(c) (burden of proof on matters related to restitution is "by the preponderance of the evidence").

gust 2014 burglary attempt through the use of that system. This fact further supports the circuit court's determination that there was a causal connection between the crime considered at sentencing and the cost of the security system.

■

¶ 19. Queever does not argue on appeal that either of the circuit court's factual findings is clearly erroneous. Instead, he contends those findings do not establish a causal nexus between the cost of the security system purchased by the victim and the "crime considered at sentencing." Queever essentially argues the circuit court interpreted the statutory term "crime considered at sentencing" too broadly by considering the burglaries that were committed before August 5, 2014. He asserts that, in this case, the "crime considered at sentencing" is limited to the August 5, 2014 attempted burglary. He contends the cost to install the victim's security system cannot possibly have been caused by the August 5, 2014 burglary because it was incurred before that date.

■

¶ 20. We conclude, however, that Queever interprets the statutory term "crime considered at sentencing" too narrowly.[3] We have previously stated the purpose of restitution is to return crime victims "to the position they were in before the defendant injured them." *Johnson*, 287 Wis. 2d 381, ¶ 14. WISCONSIN STAT. § 973.20 "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." *State*

---

[3] *See State v. Szarkowitz*, 157 Wis. 2d 740, 748, 460 N.W.2d 819 (Ct. App. 1990) (The interpretation of WIS. STAT. § 973.20 presents a question of law for our independent review.).

*v. Gibson*, 2012 WI App 103, ¶ 10, 344 Wis. 2d 220, 822 N.W.2d 500 (quoting *State v. Kennedy*, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994)). "We therefore construe the restitution statute broadly and liberally to allow victims to recover their losses resulting from the criminal conduct." *Johnson*, 287 Wis. 2d 381, ¶ 14. Moreover, we have consistently recognized that § 973.20 "creates a presumption that restitution will be ordered in criminal cases . . . ." *Gibson*, 344 Wis. 2d 220, ¶ 10.

■■■

¶ 21. Consistent with these general principles, the statutory term "crime considered at sentencing is defined in broad terms." *Canady*, 234 Wis. 2d 261, ¶ 10. It encompasses "all facts and reasonable inferences concerning the defendant's activity *related to* the 'crime' for which the defendant was convicted, not just those facts *necessary* to support the elements of the specific charge of which the defendant was convicted." *Id.* (quoting *Madlock*, 230 Wis. 2d at 333). Accordingly, when determining whether there is a causal nexus between the victim's claimed damage and the crime considered at sentencing, a court should "take a defendant's entire course of conduct into consideration." *Madlock*, 230 Wis. 2d at 333 (quoting *State v. Rodriguez*, 205 Wis. 2d 620, 627, 556 N.W.2d 140 (Ct. App. 1996)). "The restitution statute does not empower the court to break down the defendant's conduct into its constituent parts and ascertain whether one or more parts were a cause of the victim's damages." *Id.* (quoting *Rodriguez*, 205 Wis. 2d at 627).

¶ 22. The circuit court found that Queever committed the previous burglaries of the victim's home, and we have already determined that finding was not clearly erroneous. Those prior burglaries were "*related*

*to*" the attempted burglary that was considered at Queever's sentencing, *see Canady*, 234 Wis. 2d 261, ¶ 10, in that the prior burglaries and the attempted burglary involved the same home, the same victim, and the same time of night, and each involved the perpetrator entering or attempting to enter the victim's home through the same sliding glass door. On these facts, we conclude the prior burglaries and the attempted burglary were part of a single course of criminal conduct. *See Madlock*, 230 Wis. 2d at 333. Under prior case law, and given the liberal interpretation of the restitution statute, the prior burglaries therefore constituted part of the "crime considered at sentencing." *See* Wis. Stat. § 973.20(1r).

¶ 23. Our recent decision in *State v. Lumpkins*, No. 2012AP1670, unpublished slip op. (WI App Apr. 2, 2013), is instructive.[4] There, Lumpkins and two codefendants used a van, which had been reported stolen, to commit armed robberies. *Id.*, ¶¶ 2–3. When police recovered the stolen van, it had sustained approximately $1,700 in damage. *Id.*, ¶¶ 3–4. Lumpkins was charged with two counts of armed robbery with the use of force as a party to a crime. *Id.*, ¶ 2. He was not charged with stealing the van or with any crime stemming from the damage to the van. He pled guilty to one count of armed robbery, and the second count was dismissed and read in. *Id.*, ¶ 4.

¶ 24. The circuit court ordered Lumpkins to pay $1,700 in restitution to the van's owner. *Id.* We affirmed the restitution award on appeal. As relevant to this case, we concluded there was a causal connection between the damage to the van and the two armed

---

[4] Authored, unpublished opinions issued on or after July 1, 2009, may be cited for their persuasive value. *See* Wis. Stat. Rule 809.23(3)(b).

robberies considered at sentencing. *See id.*, ¶ 13. We reasoned Lumpkins' actions were a "precipitating cause of the damages to the van because, had the van not been stolen and used to commit robberies, it would have been in the care of its owner, and not damaged." *Id.*

¶ 25. As the preceding summary shows, in *Lumpkins*, we liberally interpreted the statutory term "crime considered at sentencing" to include acts that were part of the same course of conduct as the crime of conviction and a read-in offense, but that were not necessary to support the elements of those offenses. Similarly, in this case, we interpret the term "crime considered at sentencing" to include the prior burglaries of the victim's home, which the circuit court found Queever committed, even though proof of those burglaries was not necessary to sustain Queever's conviction. Just as the acts that damaged the van in *Lumpkins* were part of the same course of criminal conduct as the armed robberies considered at sentencing, the prior burglaries in this case were part of the same course of conduct as the attempted burglary for which Queever was convicted and sentenced. Under a liberal interpretation of the restitution statute, and keeping in mind the strong public policy in favor of compensating crime victims, the prior burglaries therefore constituted part of the crime considered at Queever's sentencing.

¶ 26. Our holding in this case should not be interpreted to mean that costs incurred by a victim before the occurrence of the specific criminal acts underlying the offense of conviction and any read-in offense will always be recoverable under the restitution statute. Instead, we hold that, when such costs are

requested as restitution, they are recoverable if a causal nexus is established between the costs and the entire course of the defendant's criminal conduct considered at sentencing. *See Madlock*, 230 Wis. 2d at 333. Here, for the reasons explained above, the circuit court properly exercised its discretion by concluding the requisite causal nexus was present. We therefore affirm the court's restitution award.[5]

*By the Court.*—Judgment affirmed.

---

[5] In addition to arguing the circuit court properly awarded the cost of the victim's security system as restitution, the State also argues the court appropriately ordered Queever to reimburse the victim for that cost as a condition of his extended supervision. However, based on our review of the sentencing hearing transcript and Queever's judgment of conviction, it is clear the court ordered Queever to pay the cost of the security system as restitution, not as a condition of extended supervision. Moreover, because we conclude the court properly awarded the cost of the security system as restitution, it is not necessary for us to address whether the court could have appropriately awarded that cost as a condition of extended supervision. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (appellate court need not address every issue raised by the parties when one issue is dispositive).