# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1541-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Shawn T. Wiskerchen, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 379 Wis. 2d 367, 906 N.W.2d 183
(2017 – unpublished)

| | |
|---|---|
| OPINION FILED: | January 4, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 25, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Racine |
| JUDGE: | Faye M. Flancher |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | A.W. BRADLEY, J., concurs, joined by ABRAHAMSON, J. (opinion filed). |
| | R.G. BRADLEY, J., concurs (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed and an oral argument by *Jeremy A. Newman*, assistant state public defender.

For the plaintiff-respondent, there was a brief filed by *Sopen B. Shah*, deputy solicitor general, with whom on the brief were *Brad D. Schimel*, attorney general, and *Misha Tseytlin*, deputy solicitor general. There was an oral argument by *Sopen B. Shah.*

**2019 WI 1**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1541-CR
(L.C. No. 2015CF742)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

      **v.**

**Shawn T. Wiskerchen,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JAN 4, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. This is a review of an unpublished decision of the court of appeals[1] affirming the circuit court's[2] restitution order of $8,487.41 against Shawn T. Wiskerchen for losses caused by his burglary of a neighbor's residence.

¶2 Wiskerchen argues that the circuit court erroneously exercised its discretion in calculating the amount of

---

[1] State v. Wiskerchen, No. 2016AP1541-CR, unpublished slip op., (Wis. Ct. App. Nov. 1, 2017).

[2] The Honorable Faye M. Flancher of Racine County presided.

restitution. He argues that the circuit court improperly considered alleged prior burglaries of the victim's home, contrary to Wis. Stat. § 973.20 (2015-16),[3] which he contends limits restitution to losses resulting from a "crime considered at sentencing." We reject his argument in part because Wiskerchen misreads what the circuit court decided, and also because no evidence was presented at the restitution hearing to support a finding that N.D.'s missing property was stolen on any date other than May 8, which was the burglary considered at sentencing.

¶3 First, we conclude that the plain language of Wis. Stat. § 973.20 authorized the circuit court to order restitution to the victim in this case. Second, we conclude that the circuit court's finding that the victim met her burden in proving the amount of loss resulting from a crime considered at sentencing was not clearly erroneous. The circuit court therefore did not erroneously exercise its discretion in ordering restitution of $8,487.41.

¶4 Accordingly, we affirm the court of appeals.

I. BACKGROUND

¶5 On May 8, 2015, police responded to N.D.'s home after she reported a burglary. N.D. was visibly upset, crying, shaking, and bleeding when the officers arrived. She told the officers she had come home to find all her bathroom cabinets

---

[3] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

2

open, and had heard noises coming from upstairs. She went upstairs and opened the back bedroom door to find Wiskerchen, her neighbor, in the bedroom.

¶6 When N.D. discovered that Wiskerchen was inside her home, she began yelling, and she and Wiskerchen began pushing each other. During the ensuing struggle, N.D. reported that Wiskerchen grabbed her by the arm and threw her down the stairs before fleeing the home. N.D. suffered injuries to her wrist, ankle, and shoulder as a result of this fall, and needed to wear a brace on her foot as a result of her injuries. She had difficulty sleeping after the home invasion, and has stated that she no longer feels safe and secure in her home.

¶7 Shortly after arriving at N.D.'s home, police found Wiskerchen hiding in a neighbor's backyard. They searched the backyard and found a pile of clothing matching N.D.'s description of what the suspect was wearing, as well as a badly bent screwdriver. Wiskerchen was arrested and charged with misdemeanor battery, possession of burglarious tools, burglary of a building or dwelling, and second-degree recklessly endangering safety, all as a repeater. He eventually pled no contest to the burglary charge without the repeater enhancer, and was sentenced to five years of initial confinement followed by four years of extended supervision.

¶8 Police initially had a difficult time discovering Wiskerchen's point of entry into N.D.'s home. It turned out that he had drilled a hole into a basement storm window and had modified the window so it could be opened from the outside with

3

a screwdriver. N.D. told the presentence investigative report (PSI) writer that Wiskerchen may have chosen this particular window because it was not facing any neighbors. An officer reported finding fresh sawdust in the grass beneath the storm window.

¶9 N.D. informed the PSI writer that she had discovered a "nest" in the back bedroom closet, where Wiskerchen had apparently pulled down clothes and arranged a place where he could hide. She also found liquor bottles in the "nest." This discovery caused N.D. to worry that he may have been hiding in her house on prior occasions while she was home, further eroding her sense of security. According to the PSI writer, Wiskerchen bragged that he had previously burglarized "100 to 200 homes," and had made "more money than any judge or cop" by pawning his stolen items in Illinois.

¶10 After the burglary of May 8, N.D. searched her home to take stock of potentially stolen items and collected whatever receipts she could find. She then submitted an itemized insurance claim listing her total loss at $32,138.43. N.D. explained that many of the stolen items had deep sentimental value to her. These included her children's nearly 200-year-old baby rings from Germany, her grandmother's wedding ring that was purchased during the great depression, and a pair of earrings her brother had purchased for her in 1977 after taking on odd jobs so he could afford to buy her a high school graduation gift. On cross-examination, N.D. said that prior to May 8, she did not notice that any of the items listed on her statement of

loss were missing. However, the PSI report relates that Wiskerchen disputed the number of items that N.D. claimed were stolen.

¶11 At the contested restitution hearing, N.D. asked to be reimbursed $32,138.43, the value she placed on her stolen property. The insurance company had depreciated the value of the stolen items to $22,279, and eventually paid her $13,791 due to her policy limits.

¶12 N.D. testified that Wiskerchen was wearing a backpack on May 8. However, Wiskerchen's attorney argued "there was no backpack that was reported, the only thing that could have been -- that he could have concealed, would have been on his person somehow or in his hands," implying that restitution must be limited to the items found on or near Wiskerchen's person on May 8. He also argued against the contention that Wiskerchen had previously burglarized N.D.'s home, stating that "other than [N.D.'s] opinion of whether he was in [her] house, there's been no other reports completed or done with the police department regarding any other times he was in [her] house." This echoed his statements at sentencing that "I don't really think there's any evidence of [any prior entries]." He argued that because N.D. did not know which items Wiskerchen stole during the May 8 burglary versus during the alleged, unevidenced prior burglaries, Wis. Stat. § 973.20 limited restitution to the items she could prove he stole on May 8.

¶13 The circuit court began by acknowledging that the burden of proof is on the victim to show, by a preponderance of

5

the evidence, "the amount of loss sustained by a victim as a result of a crime considered at sentencing." See Wis. Stat. § 973.20(14)(a). After reciting the relevant provisions of the restitution statute, including the correct statutory definition of "crime considered at sentencing," the circuit court made the following factual findings: "[b]ased on the record, I find that there is a nexus between Mr. Wiskerchen's conduct and the victim's loss, and I find that the victim has met her burden of proof [in the amount of $8,487.41]."

¶14 We granted Wiskerchen's petition for review and now affirm.

## II. DISCUSSION

### A. Standard of Review

¶15 This case requires us to interpret a statute, to review a circuit court's finding of fact, and to review a circuit court's discretionary restitution order.

¶16 "Statutory interpretation and the application of a statute to a given set of facts are questions of law that we review independently, but benefiting from the analyses of the court of appeals and the circuit court." Marder v. Bd. of Regents, 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.

¶17 We uphold a circuit court's findings of fact unless they are clearly erroneous. Phelps v. Physicians Ins. Co. of Wis. Inc., 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615. A circuit court's finding of fact is not clearly erroneous unless it is against the great weight and clear preponderance of the

evidence. Royster-Clark, Inc. v. Olsen's Mill, Inc., 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

¶18 Restitution orders involve discretionary decisions of the circuit court. State v. Fernandez, 2009 WI 29, ¶20, 316 Wis. 2d 598, 764 N.W.2d 509. "Reviewing the calculation of restitution involves a question of whether the trial court misused its discretionary authority." Id. This court may reverse a trial court's discretionary decision "only if the trial court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts." State v. Behnke, 203 Wis. 2d 43, 58, 553 N.W.2d 265 (Ct. App. 1996); Fernandez, 316 Wis. 2d 598, ¶20. "We look for reasons to sustain a trial court's discretionary decision." Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co., 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596.

B. Interpretation of Wis. Stat. § 973.20

1. Whether Wis. Stat. § 973.20 Authorized Restitution

¶19 The first issue is whether Wisconsin's restitution statute, Wis. Stat. § 973.20, authorized the circuit court to order restitution to N.D. in this case. Wisconsin Stat. § 973.20 states in relevant part:

> (1g)(a) "Crime considered at sentencing" means any crime for which the defendant was convicted and any read-in crime.
>
> (b) "Read-in crime" means any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the

7

defendant for the crime for which the defendant was convicted.

(1r) When imposing sentence or ordering probation for any crime . . . for which the defendant was convicted, the court . . . shall order the defendant to make full or partial restitution under this section to any victim of a crime . . . .

(2) If a crime considered at sentencing resulted in damage to or loss or destruction of property, the restitution order may require that the defendant:

. . . .

(b) . . . pay the owner or owner's designee the reasonable repair or replacement cost or the greater of:

1. The value of the property on the date of its damage, loss or destruction . . .

. . . .

(14)(a) The burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim as a result of a crime considered at sentencing is on the victim.

¶20 Statutory interpretation begins with the language of the statute. State ex. rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. Id. "If the words chosen for the statute exhibit a 'plain, clear statutory meaning,' without ambiguity, the statute is applied according to the plain meaning of the statutory terms." State v. Grunke, 2008 WI 82, ¶22, 311 Wis. 2d 439, 752 N.W.2d 769 (citing Kalal, 271 Wis. 2d 633, ¶46).

8

¶21 "Statutory purpose is important in discerning the plain meaning of a statute." Westmas v. Creekside Tree Serv., 2018 WI 12, ¶19, 379 Wis. 2d 471, 907 N.W.2d 68 (citing Kalal, 271 Wis. 2d 633, ¶48). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶46. Therefore, in construing a statute, "we favor a construction that fulfills the purpose of the statute over one that defeats statutory purpose." Westmas, 379 Wis. 2d 471, ¶19.

¶22 The primary purpose of Wis. Stat. § 973.20 is to compensate the victim. State v. Madlock, 230 Wis. 2d 324, 332, 602 N.W.2d 104 (Ct. App. 1999). The statute "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution."[4] State v. Canady, 2000 WI App 87, ¶8, 234 Wis. 2d 261, 610 N.W.2d 147 (citations omitted). For this reason, Wisconsin courts have repeatedly held that "restitution is the rule and not the exception," and "should be ordered whenever warranted." Id. (quoting Madlock, 230 Wis. 2d at 333). In light of this important public policy, courts should "construe

---

[4] Wisconsin's strong public policy of supporting victims' rights is further reflected in Wis. Stat. ch. 950, which contains a bill of rights for victims and ensures that all crime victims are "treated with dignity, respect, courtesy, and sensitivity."

the restitution statute 'broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct.'"  Madlock, 230 Wis. 2d at 332 (quoting State v. Anderson, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997)).  We interpret the restitution statute with these principles in mind.

¶23 Wisconsin Stat. § 973.20(1r) requires that the sentencing court order the defendant to pay restitution to any victim of a crime considered at sentencing, unless the court "finds substantial reason not to do so and states the reason on the record."  If "a crime considered at sentencing" resulted in a loss of property, courts are authorized to pay the victim either the replacement cost or the property's value. Wis. Stat. § 973.20(2)(b).

¶24 A "crime considered at sentencing" means the crime of conviction and any read-in crime.  Wis. Stat. § 973.20(1g)(a). A "read-in crime" is a crime that meets three criteria:  (1) is uncharged or is dismissed as part of a plea agreement, (2) the defendant agrees that it will be considered at sentencing, and (3) the court considers it at the time of sentencing. § 973.20(1g)(b).

¶25 At a restitution hearing, the victim has the burden of proving the amount of loss she sustained as a result of a crime considered at sentencing.  Wis. Stat. § 973.20(14)(a).  In keeping with Wisconsin's strong public policy of compensating victims, Wisconsin courts have interpreted "crime considered at sentencing" quite broadly.  The crime encompasses "all facts and

reasonable inferences concerning the defendant's activity related to the 'crime' for which the defendant was convicted, not just those facts necessary to support the elements of the specific charge of which the defendant was convicted." Canady, 234 Wis. 2d 261, ¶10 (quoting Madlock, 230 Wis. 2d at 333). The victim needs to show that there is a "causal nexus" between the crime and the victim's losses, such that the defendant's criminal activity was a "substantial factor" in causing the losses. Canady, 234 Wis. 2d 261, ¶9. The court considers the defendant's "entire course of conduct" in committing the crime of conviction, not merely the facts necessary to support the conviction. Id., ¶10 (quoting State v. Rodriguez, 205 Wis. 2d 620, 627, 556 N.W.2d 140 (Ct. App. 1996)).

¶26 Canady demonstrated the breadth of "crime considered at sentencing." In that case, Canady "put forth quite a struggle" when police attempted to arrest him for burglary. Canady, 234 Wis. 2d 261, ¶11. As the officers struggled to escort him to the ground, he attempted to grab a pry bar from his pocket. Id. An officer tossed it out of his reach, breaking a glass door behind him. Id. Canady was convicted of burglary and resisting arrest. Id., ¶3. The circuit court ordered Canady to pay restitution for the cost of repairing the broken door, and the court of appeals affirmed. Id., ¶12. Even though Canady did not break the door himself, and even though this fact was not strictly necessary to convict him of resisting arrest, his conduct in committing the crime of conviction was a "substantial factor" in causing the damage. Id.

11

¶27 In this case, Wiskerchen was convicted of burglarizing N.D.'s home on May 8. This burglary was a "crime considered at sentencing" under Wis. Stat. § 973.20(1g)(a), as it was a crime for which the defendant was convicted. N.D. was the victim of the May 8 burglary, as it was her home that was burglarized, so she was a victim of a "crime considered at sentencing." Therefore, Wis. Stat. § 973.20 authorized the circuit court to order Wiskerchen to pay restitution to N.D.

¶28 Finally, we note that any potential prior burglaries were not "read-in crimes." As mentioned above, one component of a read-in crime under Wis. Stat. § 973.20(1g)(b) is that the defendant agrees to have it considered at sentencing. Wiskerchen did not agree to have any potential prior burglaries considered at sentencing. Therefore, they are not read-in crimes.

## 2. Restitution Amount

¶29 We next review the circuit court's finding of fact that the victim met her burden of proving a loss of $8,487.41 as a result of a crime considered at sentencing. We conclude that although the circuit court did not itemize which stolen items were included in the award of $8,487.41, the finding of fact that N.D. proved her loss is not clearly erroneous.

¶30 As noted above, a circuit court's finding of fact is not clearly erroneous unless it is against the great weight and clear preponderance of the evidence, even if the evidence may have presented competing factual inferences. See Phelps, 319 Wis. 2d 1, ¶39. Findings of fact will be affirmed on appeal as

12

long as the evidence would permit a reasonable person to make the same finding. Royster-Clark, Inc., 290 Wis. 2d 264, ¶12. We search the record not for evidence opposing the circuit court's decision, but for evidence supporting it. Id.

¶31 In this case, the evidence presented at the restitution hearing would permit a reasonable person to find that N.D. had met her burden to prove "the amount of loss sustained." First, evidence was presented that numerous items were stolen from N.D.'s home. N.D. presented an itemized list of missing property that she had submitted to her insurance company. She testified that this document was a "true and accurate representation" of the items she found missing after the burglary. There was no evidence presented at the restitution hearing to rebut N.D.'s claim.

¶32 Second, we know Wiskerchen burglarized N.D.'s home on May 8. He pled guilty to this burglary, which was by definition a "crime considered at sentencing" pursuant to Wis. Stat. § 973.20(1g)(a).

¶33 Third, there was no evidence presented that any of the items comprising the amount for which restitution was ordered were stolen from N.D.'s home on any date other than May 8. Only Wiskerchen's mother's hearsay statement relayed by N.D. that he had been in and out of her house prior to May 8 implied there could have been other thefts.[5]

---

[5] Wiskerchen's mother did not testify at the restitution hearing.

¶34 Next, the "nest" in the bedroom closet could be evidence that Wiskerchen may have burglarized N.D.'s home on days other than May 8. However, he also could have hidden there and drank liquor on prior occasions, without stealing any of the property that N.D. discovered was missing after the May 8 burglary.

¶35 Crucially, there was no evidence presented at the restitution hearing that either he or anyone else had stolen any of the listed items from N.D.'s home on days other than May 8. On the contrary, his attorney asked N.D. the following question at the restitution hearing: "other than your opinion of whether he was in your house, there's been no other reports completed or done with the police department regarding any other times he was in your house, correct?" Shortly thereafter, he asked her: "May 8 is the only report that he was in your house, correct?" N.D. answered both questions in the affirmative. Wiskerchen's attorney had previously stated at the sentencing hearing that "I don't think there's really any evidence of [any prior burglaries]."

¶36 The consistent theme from the defense was that there was no evidence Wiskerchen burglarized N.D.'s home before May 8. That said, the finding that N.D. proved a loss in the amount of $8,487.41 for which restitution was ordered due to stolen property is not against the great weight and clear preponderance of the evidence presented to the circuit court. Therefore, the circuit court's finding that N.D. met her burden of proving a

14

loss of $8,487.41 as a result of a crime considered at sentencing is not clearly erroneous.

### C.  The Circuit Court's Exercise of Discretion

¶37 Having concluded that restitution was authorized and that the circuit court's finding that the victim had met her burden of proof was not clearly erroneous, we now review the circuit court's discretionary decision to set restitution at $8,487.41.  As mentioned above, restitution orders involve discretionary decisions of the circuit court.  We may reverse a circuit court's discretionary decision "only if the trial court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts." Behnke, 203 Wis. 2d at 58; Fernandez, 316 Wis. 2d 598, ¶20.  We look for reasons to sustain a trial court's discretionary decision. Farmers Auto. Ins. Ass'n, 319 Wis. 2d 52, ¶32.

¶38 In this case, the circuit court applied the correct legal standard and grounded its decision on a logical interpretation of the facts.  The court applied the mandate of Wis. Stat. § 973.20 and found that N.D. suffered a loss due to Wiskerchen's conduct.  The court knew that Wiskerchen had burglarized N.D.'s home on May 8, and no evidence was introduced that he or anyone else had stolen N.D.'s property on any other date.  Given that this was the evidence presented, the finding that Wiskerchen was responsible for N.D.'s loss based on the May 8 burglary is a logical interpretation of the evidence.

¶39 Wiskerchen contends that the court of appeals' decision applied the wrong law, erroneously considering possible

15

prior burglaries in its restitution award. According to the court of appeals, any prior burglaries of N.D.'s home were proper subjects of consideration under Wis. Stat. § 973.20, as they were part of the same "course of criminal conduct" as the May 8 burglary. State v. Wiskerchen, No. 2016AP1541-CR, unpublished slip op., ¶13 (Wis. Ct. App. Nov. 1, 2017).

¶40 The court of appeals relied heavily on State v. Queever, 2016 WI App 87, 372 Wis. 2d 388, 887 N.W.2d 912, in reaching its conclusion. However, Queever is distinguishable. There, a woman suspected that her home was being burglarized repeatedly. Id., ¶3. She watched her home's security camera footage and saw a man with "longer hair and a larger body build" entering her home. Id. The footage was not clear enough to identify the suspect, so she purchased a new security system for $2,495. Id., ¶¶6-8. The new system was then used to identify and capture the suspect, Thomas Queever. Id., ¶6.

¶41 The circuit court awarded restitution for the cost of the new security system, and the court of appeals affirmed. Id., ¶1. The court held that the circuit court's finding that Queever committed the previous burglaries was not clearly erroneous, and that the previous burglaries were properly considered under Wis. Stat. § 973.20 as "part of the same course of conduct as the crime of conviction." Id., ¶¶16, 25.

¶42 Relying on Queever, the court of appeals in the case now before us held that Wiskerchen's alleged prior burglaries of N.D.'s home properly could be considered at Wiskerchen's restitution hearing as part of a "single course of criminal

16

conduct" related to the May 8 burglary.  Wiskerchen, unpublished slip op., ¶13.

¶43 We reject Wiskerchen's argument.  We review the circuit court's exercise of discretion, not the court of appeals' reasoning.  See Fernandez, 316 Wis. 2d 598, ¶20.  That said, we read the circuit court's decision a bit differently than did the court of appeals.

¶44 The court of appeals assumed the restitution order implied that "[t]he circuit court determined that it could consider the prior burglaries as conduct related to Wiskerchen's May 8 burglary."  Wiskerchen, unpublished slip op., ¶5.  We do not read the circuit court's restitution order or the transcript from the restitution hearing as necessarily implying this conclusion of law.  The circuit court explicitly found only that "based on the record . . . the victim has met her burden of proof."  Her burden was to prove the amount of her loss.  Wis. Stat. § 973.20(14)(a).  She proved a loss of $8,487.41.  As explained above, this finding of fact is not clearly erroneous. We conclude that the circuit court did not apply the wrong law, and that its decision was grounded on a logical interpretation of the evidence that was presented at the restitution hearing. The circuit court therefore did not erroneously exercise its discretion by setting restitution at $8,487.41.

### III.  CONCLUSION

¶45 Wiskerchen argues that the circuit court erroneously exercised its discretion in calculating the amount of restitution.  He argues that the circuit court improperly

17

considered alleged prior burglaries of the victim's home, contrary to Wis. Stat. § 973.20 which he contends limits restitution to losses resulting from a "crime considered at sentencing." We reject his argument in part because Wiskerchen misreads what the circuit court decided and also because no evidence was presented at the restitution hearing to support a finding that N.D.'s missing property was stolen on any date other than May 8, which was the burglary considered at sentencing.

¶46 First, we conclude that the plain language of Wis. Stat. § 973.20 authorized the circuit court to order restitution to the victim in this case. Second, we conclude that the circuit court's finding that the victim met her burden in proving the amount of loss resulting from a crime considered at sentencing was not clearly erroneous. The circuit court therefore did not misuse its discretion in calculating restitution at $8,487.41.

¶47 Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶48 ANN WALSH BRADLEY, J. *(concurring)*. Although I agree with the majority's conclusion that N.D. is entitled to recover restitution in the amount of $8,487.41, I do not join its analysis. I part ways with the majority because it misreads the record and anchors its analysis on a skewed focus of the circuit court's factual findings.

¶49 The majority misreads the record by asserting that "there was no evidence presented that any of the items comprising the amount for which restitution was ordered were stolen from N.D.'s home on any date other than May 8." See majority op., ¶33.

¶50 Neither the State nor Wiskerchen argued in support of the majority's view of the record. Likewise, neither the circuit court nor the court of appeals subscribed to such an approach.

¶51 Rather, the testimony in the circuit court supports a contrary assertion, i.e., some of the property likely was stolen on dates prior to May 8. Accordingly, the circuit court found "that there is a nexus between Mr. Wiskerchen's conduct and the victim's loss, and I find that the victim has met her burden of proof."

¶52 With the actual facts of record and complete circuit court finding in hand, I would affirm the court of appeals. Relying on our prior case law, I conclude that where a circuit court makes specific factual findings regarding uncharged conduct that is "related to" the crime of conviction, and there is a causal nexus between the conduct and the loss, restitution

1

is permissible for uncharged conduct. Accordingly, I respectfully concur.

I

¶53 The circuit court determined that N.D. was entitled to restitution. It arrived at this determination by explicitly referencing Wiskerchen's alleged prior burglaries, how he had been in the victim's home many times, and that he built a "nest" in her closet. The circuit court further referenced Wiskerchen's practice of pawning stolen goods in Illinois. From this evidence, the circuit court actually found "that <u>there is a nexus between Mr. Wiskerchen's conduct and the victim's loss</u>, and I find that the victim has met her burden of proof" (emphasis added).

¶54 The majority focuses on the second half of the circuit court's statement while ignoring the first. It criticizes Wiskerchen for "misread[ing] what the circuit court decided" and concludes that "no evidence was presented at the restitution hearing to support a finding that N.D.'s missing property was stolen on any date other than May 8, which was the burglary considered at sentencing." Majority op., ¶2.

II

¶55 Such an assertion is backwards. It is the majority, and not Wiskerchen, that "misreads what the circuit court decided."

¶56 A finding that all of the stolen property was taken on May 8 is contrary to the evidence in this record. There was testimony that Wiskerchen used a chisel to gain access to N.D.'s

2

home through a storm window and that he repeatedly entered and exited in such a fashion. The record reflects that N.D. claimed the loss of over 100 items, including a video game system, several coats, a case of wine, dishes, a microwave, a crockpot, and a printer. Further, the record reflects that Wiskerchen was carrying only a backpack during the course of the May 8 burglary. When asked if Wiskerchen could have fit all of the lost items in his backpack, N.D. responded, "Not on that day. It was many days that he was in my house."

¶57 Neither Wiskerchen nor the State argued that every item was stolen on May 8. From the testimony, the circuit court understandably determined that there was a nexus between Wiskerchen's prior conduct and the May 8 burglary and ordered restitution accordingly.

¶58 Rather than embrace the factual and analytical missteps of the majority, I would affirm the court of appeals based on restitution principles and statutory interpretation gleaned from prior case law.

¶59 Restitution is governed by Wis. Stat. § 973.20. Pursuant to Wis. Stat. § 973.20(2)(b), "[i]f a crime considered at sentencing resulted in damage to or loss or destruction of property, the restitution order may require that the defendant . . . pay the owner or owner's designee the reasonable repair or replacement cost" of the property lost. A "crime considered at sentencing" is defined by statute as "any crime for which the defendant was convicted and any read-in crime." Wis. Stat. § 973.20(1g)(a).

3

¶60 We are to interpret the restitution statute "broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct." State v. Gibson, 2012 WI App 103, ¶10, 344 Wis. 2d 220, 822 N.W.2d 500. The restitution statute "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." State v. Kennedy, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994).

¶61 In State v. Rodriguez, the court of appeals established that a sentencing court is to take into account "a defendant's entire course of conduct" in determining an award of restitution. 205 Wis. 2d 620, 627, 556 N.W.2d 140 (Ct. App. 1996). Accordingly, we broadly define what constitutes a "crime considered at sentencing" for which restitution may be ordered. See Wis. Stat. § 973.20(1g)(a); State v. Canady, 2000 WI App 87, ¶10, 234 Wis. 2d 261, 610 N.W.2d 147.

¶62 The term "crime" "as used in the restitution statute is properly understood as 'encompassing all facts and reasonable inferences concerning the defendant's activity related to the "crime" for which the defendant was convicted, not just those facts necessary to support the elements of the specific charge of which the defendant was convicted.'" State v. Madlock, 230 Wis. 2d 324, 333, 602 N.W.2d 104 (Ct. App. 1999). Before restitution may be ordered, a causal nexus must be established between the "crime considered at sentencing" and the damage for which restitution is ordered. Canady, 234 Wis. 2d 261, ¶9. In proving causation, the victim must demonstrate that the

4

defendant's criminal activity was a substantial factor in causing the damage. Id.

¶63 Relying on our prior case law, I conclude that where a circuit court makes specific factual findings regarding uncharged conduct that is "related to" the crime of conviction, and there is a causal nexus between the conduct and the loss, restitution is permissible for uncharged conduct. See Rodriguez, 205 Wis. 2d at 627; Madlock, 230 Wis. 2d at 333; Canady, 234 Wis. 2d 261, ¶9. The requirement of specific factual findings serves a dual purpose. First, it provides a safeguard to defendants so as to not hold them financially responsible for losses that may have occurred to victims not as a result of the defendants' conduct. Second, it avoids an unreasonable result that would leave a crime victim with no restitution for the sole reason that the victim is unable to prove which items were taken on any specific day. See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that statutory language is to be interpreted "reasonably, to avoid absurd or unreasonable results").

¶64 Here, the circuit court made such specific factual findings. Citing the presentence investigation report, the circuit court found that:

- "[Wiskerchen] stated that he had burglarized between one hundred to two hundred homes and had never been caught."

5

- "He further told the PSI writer that he would take the items that he stole to the state of Illinois where he knew a guy who would pawn the stolen goods and would not ask for identification."

- "[The victim] told the PSI writer how Mr. Wiskerchen's mother told her how the defendant had been in her home many times prior to actually being caught."

- "[The victim] also reported to the PSI writer how she had discovered that the defendant made what she referred to as a nest in the back of her closet where she discovered liquor bottles, and it appeared that he had hid out during the day when she was at work . . . ."

- "Based on the record, I find that there is a nexus between Mr. Wiskerchen's conduct and the victim's loss . . . ."

¶65 These factual findings describe a course of conduct that is "related to" the May 8 burglary. The course of conduct described is "related to" the May 8 burglary because it involves the same house where Wiskerchen created a "nest" in the closet and appeared to hide out during the day, the same victim, and the same mode of entry. See State v. Queever, 2016 WI App 87, ¶22, 372 Wis. 2d 388, 887 N.W.2d 912. Consequently, in my view restitution is appropriate.

¶66 In sum, I agree with the majority that N.D. is entitled to $8,487.41 in restitution. However, I do not join the majority's reasoning because it misreads the record and

bases its analysis on a skewed focus of the circuit court's findings of fact. Accordingly, I respectfully concur.

¶67 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this concurrence.

¶68 REBECCA GRASSL BRADLEY, J. *(concurring)*. Like the majority, I would affirm the court of appeals decision affirming the circuit court's restitution order. I join the majority opinion in full but I write separately because a textual interpretation of the restitution statute, specifically Wis. Stat. § 973.20(1r) and (13)(a), supports the circuit court's decision.

I

¶69 The interpretation and application of a statute begin with the language of the statute. See <u>State ex rel. Kalal v. Cir. Ct. for Dane Cty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Because "[c]ontext is important to meaning . . . statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." <u>Id.</u>, ¶46 (citations omitted). "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." <u>Id.</u>

¶70 The text of Wis. Stat. § 973.20(1r) interpreted in the context of the surrounding sections of the restitution statute shows that subsection (1r) does not constrain the circuit court to the crime considered at sentencing when ordering restitution. Subsection (1r) requires the circuit court to order the defendant to make restitution to any victim of a crime considered at sentencing: "the court . . . shall order the defendant to make full or partial restitution . . . to any

1

victim of a crime considered at sentencing[.]" Subsection (1r), unlike several of the other statutory subsections addressing restitution, does not restrict the circuit court's order of restitution to only crimes considered at sentencing nor does it limit the court to ordering restitution for only those losses incurred as a result of a crime considered at sentencing. Instead, it requires the circuit court to award restitution to any <u>victim</u> of a crime considered at sentencing, thereby establishing the category of persons to whom the defendant must be ordered to pay restitution.

¶71 In contrast to the text of subsection (1r), the language of subsections (2), (3), (4), and (5) imposes limits on the particular types of restitution addressed——namely, restitution under these subsections is confined to losses arising from the crime considered at sentencing. For example, subsection (3) allows the court to order the defendant to "[r]eimburse the injured person for income lost <u>as a result of</u> a crime considered at sentencing." (Emphasis added.) Similarly, subsection (5) permits the circuit court to require the defendant to "[p]ay all special damages . . . which could be recovered in a civil action against the defendant for his . . . conduct in the commission of a crime considered at sentencing." Subsection (1r) is phrased quite differently; it simply identifies the group of people to whom the defendant must be ordered to pay restitution: "any victim of a crime considered at sentencing." If the legislature intended to confine the scope of restitution orders to losses incurred as a

2

result of a crime considered at sentencing, it certainly could have done so by employing the exact language it wrote in subsections addressing particular types of losses sustained by victims. Instead, it afforded courts much flexibility in crafting restitution orders, so long as restitution is ordered to be paid to any victim of a crime considered at sentencing.

¶72 Additionally, Wisconsin Stat. § 973.20(13)(a) directs the circuit court to consider five factors in determining whether to order restitution and in what amount:

1. The amount of loss suffered by any victim as a result of a crime considered at sentencing.

2. The financial resources of the defendant.

3. The present and future earning ability of the defendant.

4. The needs and earning ability of the defendant's dependents.

5. Any other factors which the court deems appropriate.

The statute specifically requires the circuit court to consider the loss suffered by the victim <u>as a result of</u> a crime considered at sentencing. But the statute does not restrict the circuit court to ordering restitution only for that loss. Subdivision 5 grants to the circuit court the discretion to consider "[a]ny <u>other</u> factors" the circuit court deems appropriate. (Emphasis added.)

¶73 Many cases do not involve a defendant's commission of repeated crimes against the same victim causing losses with potentially unidentifiable dates such as the possible serial burglaries in this case, so we address a relatively infrequent

3

if not rare situation perhaps not contemplated by the statutes, and one that the legislature may wish to address with more specificity. Wisconsin Stat. § 973.20(13)(a)5 gives the circuit court great latitude to consider among "other factors" the difficulty (if not impossibility) of establishing May 8th as the one and only date on which the defendant burglarized the victim's home. While the circuit court <u>must</u> consider the amount of loss suffered by the victim <u>as a result of</u> a crime considered at sentencing, the circuit court is free to consider <u>any other factors</u> the court deems appropriate.

¶74 Subsection (14) also uses the language "as a result of a crime considered at sentencing" in designating the burden of proof:

> (a) The burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim as a result of a crime considered at sentencing is on the victim.
>
> . . .
>
> (c) The burden of demonstrating, by the preponderance of the evidence, such other matters as the court deems appropriate is on the party designated by the court, as justice requires.

There is nothing in the statutes requiring the victim to identify the date on which her losses were sustained; she must only establish by a preponderance of the evidence the loss she suffered as a result of a crime considered at sentencing and the circuit court's conclusion that she met that burden is not clearly erroneous. Her home was burglarized on May 8th, she presented documentation of items that were missing after that burglary, and nothing contradicted her evidence.

4

¶75 The legislature used "as a result of a crime considered at sentencing" or similar language tying a victim's recovery of particular losses to the crime considered at sentencing in certain sections of the restitution statute, but not in a way that restricts the circuit court to awarding restitution only for losses sustained "as a result of a crime considered at sentencing." In other sections of the statute, the legislature did not limit restitution to only those losses arising "as a result of a crime considered at sentencing." Most significantly, in Wis. Stat. § 973.20(1r), the legislature mandated an order of restitution to be paid by the defendant "to any victim of a crime considered at sentencing." The legislature did not command an order of restitution to be paid by the defendant for a crime considered at sentencing or as a result of a crime considered at sentencing. Where a statute "used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012); Johnson v. City of Edgerton, 207 Wis. 2d 343, 351, 558 N.W.2d 653 (Ct. App. 1996) ("When the legislature uses different terms in a statute——particularly in the same section——we presume it intended the terms to have distinct meanings."). Because the legislature used different language in separate sections of the restitution statute, we presume distinct meanings and give full effect to the language chosen.

¶76 Because the text of the restitution statute fully supports the circuit court's restitution award, I join the majority opinion in affirming the court of appeals decision affirming the circuit court's order.