STATE of Wisconsin, Plaintiff-Respondent,

v.

Cody A. GIBSON, Defendant-Appellant.†

Court of Appeals

*No. 2011AP1760–CR. Submitted on briefs June 1, 2012.
—Decided August 1, 2012.*

2012 WI App 103

(Also reported in 822 N.W.2d 500.)

† Petition for Review filed 8-29-12.

220

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Faun M. Moses*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Nancy A. Noet*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. NEUBAUER, P.J.   Cody A. Gibson appeals from a judgment of conviction entered upon his no contest plea to robbery with threat of force. Gibson challenges the restitution award related to the read-in crime of operating a motor vehicle without consent of the owner. The circuit court ordered Gibson to reim-

burse Acuity Insurance Company $6292.86 for losses it incurred in compensating the owners of the vehicle stolen by Gibson and reimburse the owners for their payment of the $250 insurance deductible. Gibson contends that (1) the circuit court did not have authority to order Gibson to pay restitution because the stolen vehicle was recovered and (2) the restitution order is not valid because the circuit court did not address whether justice required the payment of restitution to the insurance company. We reject Gibson's challenges to the restitution order. We affirm the judgment.

## BACKGROUND

¶ 2. The facts underlying the restitution order on the read-in crime of operating a motor vehicle without consent of the owner[1] were testified to at the restitution hearing and are undisputed. Gibson stole David and Billie Jo Poolers' vehicle on April 19, 2010.[2] That same day, the Poolers notified Acuity of the theft. Amy Lemerond, a senior field insurance adjuster for Acuity testified at the restitution hearing that Acuity then "settle[d]" the theft claim, paying out $11,113.46 for the total loss or theft of the Poolers' vehicle. On April 20, the Poolers learned that the police had recovered the vehicle. Because the Poolers had been paid before Acuity was notified that the vehicle had been recovered, Acuity gave the Poolers the option to take back the

---

[1] Under the restitution statute, read-in crimes are considered at sentencing. *See* WIS. STAT. § 973.20(1g)(a)-(b) (2009–10). All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] The record reflects that after stealing the Poolers' vehicle, Gibson drove it to the gas station where he committed the robbery. Gibson then abandoned the vehicle a couple of blocks away from where it was stolen.

vehicle and return the payment or have Acuity take possession of the vehicle and process it to be sold at auction. Although not provided for in its insurance policy, Acuity's standard procedure is to give the insured the option. The Poolers chose not to take the vehicle back. When the Poolers reported the April 19 theft, they needed a vehicle and did not want to wait to see whether theirs would be recovered.

¶ 3. The recovered vehicle was ready for pick up on April 26 and Lemerond's note dated that same day indicates that there was very little damage to the vehicle and she expected to get "a good salvage." Acuity obtained an Autosource Valuation which valued the vehicle at $10,379. In the end, Acuity recovered $4820.60 from the sale of the vehicle at auction. Its restitution request was for $6292.86, the difference between its $11,113.46 pay out to the vehicle lien holder and the $4820.60 in proceeds from the sale of the vehicle.

¶ 4. Gibson challenged Acuity's restitution request. Gibson argued that his actions did not cause Acuity's $11,000 loss, but rather Acuity's decision to reimburse the Poolers for the entire loan payout amount on the vehicle caused its loss. Gibson argued that Acuity's loss could also be attributed to its decision to sell the vehicle at auction for $4820.60 rather than attempting to obtain its fair market value of $10,379. Gibson also challenged the restitution order requiring him to reimburse the Poolers for their $250 deductible paid to Acuity.

¶ 5. As to Acuity's handling of the Poolers' insurance claim and sale of the vehicle at auction through a salvage company, the circuit court found that once the victims exercised their option for recovering the total loss of the vehicle within "the confines and spirit and

language" of the policy and Acuity took possession of the vehicle, Acuity's actions were consistent with its normal business practices. Further, the court noted Lemerond's testimony, based on her experience of fifteen years in the insurance industry, that the procedures followed by Acuity in turning the vehicle over to a salvage company for sale at auction is "standard and customary" in the insurance industry. Thus, the circuit court rejected Gibson's challenges, finding that the State had established by the preponderance of the evidence that the victims, including Acuity, were entitled to the restitution claims requested.

¶ 6.  Gibson appeals.

## DISCUSSION

¶ 7.  Gibson contends that the circuit court did not have the authority under WIS. STAT. § 973.20 to order him to pay restitution when the only item at issue, the stolen vehicle, was recovered. Gibson further contends that, contrary to its standard practice, Acuity should have required the victims to take the car back. Gibson reasons that because Acuity did not do so, it did not suffer a compensable loss. Finally, Gibson argues that because Acuity was not a victim, the circuit court erred in failing to address whether justice required Acuity to be compensated. We reject each of Gibson's arguments in turn.

■■

¶ 8.  A request for restitution, including the calculation as to the appropriate amount of restitution, is addressed to the circuit court's discretion and its decision will only be disturbed when there has been an erroneous exercise of that discretion. *State v. Madlock*, 230 Wis. 2d 324, 329, 602 N.W.2d 104 (Ct. App. 1999);

*State v. Fernandez*, 2009 WI 29, ¶ 50, 316 Wis. 2d 598, 764 N.W.2d 509. However, whether the circuit court is authorized to order restitution pursuant to Wis. Stat. § 973.20 under a certain set of facts presents a question of law that we review de novo. *State v. Haase*, 2006 WI App 86, ¶ 5, 293 Wis. 2d 322, 716 N.W.2d 526. Our interpretation of § 973.20 is guided by the general rules of statutory construction. *State v. Lee*, 2008 WI App 185, ¶ 7, 314 Wis. 2d 764, 762 N.W.2d 431.

> Statutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. We interpret statutory language in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Where this process yields a plain meaning, the statute is not ambiguous and is applied according to this ascertainment of its meaning. If the language is ambiguous, however, we look beyond the language and examine the scope, history, context, and purpose of the statute.

*Id.* (citation omitted).

¶ 9. We look first to Wis. Stat. § 973.20 which governs restitution. It provides that the circuit court "shall order the defendant to make full or partial restitution . . . to any victim of a crime considered at sentencing . . . unless the court finds substantial reason not to do so." Sec. 973.20 (1r). In ordering restitution for the loss or destruction of property, § 973.20 instructs:

> (2) If a crime considered at sentencing resulted in damage to or loss or destruction of property, the restitution order may require that the defendant:

(a) Return the property to the owner or owner's designee; or

(b) If return of the property under par. (a) is impossible, impractical or inadequate, pay the owner or owner's designee the reasonable repair or replacement cost or the greater of:

1. The value of the property on the date of its damage, loss or destruction; or

2. The value of the property on the date of sentencing, less the value of any part of the property returned, as of the date of its return. The value of retail merchandise shall be its retail value.

Under § 973.20(5)(d), if justice so requires, a court may order a defendant to reimburse any insurer "who has compensated a victim for a loss otherwise compensable under [§ 973.20]." Gibson contends the insurer did not compensate the Poolers for a compensable loss under § 973.20(2)(a) and (b) because the stolen vehicle was recovered. Had Acuity required the victims to take the vehicle back, Gibson contends, neither Acuity nor the Poolers would have suffered a loss.

¶ 10.   A primary purpose of restitution is to compensate the victim. *See State v. Sweat*, 208 Wis. 2d 409, 422, 561 N.W.2d 695 (1997). To that end, this court has consistently recognized that WIS. STAT. § 973.20 creates a presumption that restitution will be ordered in criminal cases and that the restitution statute should be interpreted broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct. *State v. Anderson*, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997). Section 973.20 "reflects a strong equitable public policy that victims should not have to bear the burden of

227

losses if the defendant is capable of making restitution." *State v. Kennedy*, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994).

¶ 11.   Before a circuit court may order restitution "there must be a showing that the defendant's criminal activity was a substantial factor in causing" pecuniary injury to the victim. *State v. Johnson*, 2002 WI App 166, ¶ 16, 256 Wis. 2d 871, 649 N.W.2d 284. Put another way, we have said that a causal link for restitution purposes is established when "the defendant's criminal act set into motion events that resulted in the damage or injury." *State v. Rash*, 2003 WI App 32, ¶ 7, 260 Wis. 2d 369, 659 N.W.2d 189. A defendant "cannot escape responsibility for restitution simply because his or her conduct did not directly cause the damage." *Madlock*, 230 Wis. 2d at 336.

¶ 12.   Gibson acknowledges that the Poolers were victims of the crime of operating a motor vehicle without the owner's consent for purposes of WIS. STAT. § 973.20. Pursuant to § 973.20(2), the Poolers suffered a loss of property due to Gibson's actions. The Poolers reported their loss to Acuity and, pursuant to its usual practice, Acuity promptly satisfied the Poolers' loan obligation on the stolen vehicle so that the Poolers could purchase a replacement. While the vehicle was later recovered, the Poolers had already accepted full payment for the vehicle from Acuity. Acuity did not subsequently impose a "return" requirement, which would have been inconsistent with its usual and customary practice.

¶ 13.   WISCONSIN STAT. § 973.20(2)(a) permits a circuit court at sentencing to order return of property to the owner; however, if such return is impossible, im-

228

practical or inadequate, the court may order repair or replacement under § 973.20(2)(b). Here, the option to order return of the vehicle was no longer available at sentencing. Moreover, when the vehicle was recovered, the victim had been compensated by Acuity, and the circumstances made return of the vehicle at that time impractical. Thus, the court did not err in declining to impose an after-the-fact return requirement upon Acuity's restitution claim. In so concluding, we note that this court has previously rejected the contention that the eventual recovery of stolen property satisfies the defendant's restitution obligation, instead holding that § 973.20 permits the circuit court to fashion restitution to fit the crime and make the victim whole. *See State v. Boffer*, 158 Wis. 2d 655, 661. ¶ 62, 462 N.W.2d 906 (Ct. App. 1990) ("The statute is obviously drafted to fit neatly into the court's sentencing discretion."). This includes the discretion to select between any number of reasonable approaches to restitution—whether it be the return of the property or paying the repair or replacement cost. *See id.*

¶ 14.   Here, the undisputed fact remains that Gibson stole the Poolers' vehicle. The losses suffered by the Poolers—both in the loss of the vehicle and in the payment of the $250 deductible—were the result of Gibson's actions. The circuit court found Lemerond's testimony as to the facts and circumstance surrounding the insurance payment, the sale of the vehicle, and its ultimate loss to be credible. *See id.* at 663 (the finder of fact at the restitution hearing is free to accept, reject and give weight to the evidence as it deems appropriate). The defendant's actions were the "precipitating cause of the injury" and the harm that resulted was the "natural consequence" of Gibson's actions. *See State v. Canady*, 2000 WI App 87, ¶ 9, 234 Wis. 2d 261, 610

N.W.2d 147 (citation omitted). Because Acuity compensated the Poolers for their loss, the court had the authority under WIS. STAT. § 973.20(2)(d) to order Gibson to reimburse Acuity "if justice so require[d]."

¶ 15. This brings us to Gibson's second argument. Gibson contends that the restitution order requiring payment to Acuity is not valid because the circuit court did not explicitly address whether justice required it under WIS. STAT. § 973.20(5)(d). We reject Gibson's argument. Gibson does not dispute that it is within the court's discretion to award restitution to insurers. *See Fernandez*, 316 Wis. 2d 598, ¶ 62. Here, evidence was submitted as to the cost incurred by Acuity in compensating the Poolers for their insured loss in a manner consistent with its business practice. As in *Fernandez*, the circuit court's determination that justice required Gibson to pay restitution to Acuity is implicit in its finding that Acuity was entitled to restitution. *Id.*, ¶ 62 n.32. Based on the record before us, we uphold the circuit court's determination.

## CONCLUSION

¶ 16. We conclude that the circuit court did not erroneously exercise its discretion in ordering restitution to Acuity and the Poolers. The sequence of events in the case made it impractical under WIS. STAT. § 973.20(2)(b) for the stolen vehicle to be returned to its owners. As such, the circuit court's determination that the insurer, Acuity, was entitled to compensation for the losses it incurred in fulfilling its obligation to its insureds in a manner consistent with its business practice was reasonable. The circuit court's order of restitution to Acuity is tantamount to a finding that justice so

required it. We therefore decline Gibson's request to vacate that portion of the restitution order requiring payment of $250 to the Poolers and $6292.86 to Acuity. We affirm the judgment.

*By the Court.*—Judgment affirmed.

¶ 17. BROWN, C.J. (*Concurring*). I write separately in anticipation of some who might read the lead opinion and argue that the return of property only became impossible or impractical due to Acuity's standard operating procedures rather than by an act directly attributable to Gibson's conduct. In other words, while Gibson's conduct in stealing the car caused the Poolers immediate harm, that harm would have dissipated but for the intervening conduct of Acuity.

¶ 18. Assuming this contention will be made, I reject it. The Poolers suffered a loss when the car was stolen. They looked to their insurance company for relief. The insurance company gave the Poolers relief right away. This is good news for insureds in Wisconsin when an insurer compensates right away. We should not craft some judicial roadblock to fast action by insurers. Thus, when the insurer paid the insured right away, the money became the property of the insured at that point and the law should not say otherwise.

¶ 19. Yes, the car was afterward returned in relatively sound condition. Does this change things? I would say "no." To do so would allow the convicted criminal to dictate insurance reimbursement procedures. Are we now going to force the unraveling of how the insurer and the insured responded to the theft? Again, I say "no." The thief is the one who caused the insurer to act. The insurer's action should be considered a natural and probable consequence of the theft. For the

231

thief to now be able to unring the bell would be impractical if not impossible. The lead opinion gets it right.