# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP2340-CR

Complete Title of Case:

**STATE OF WISCONSIN,**

   **PLAINTIFF-RESPONDENT,**

   **V.**

**TROY R. LASECKI,**

   **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | May 19, 2020 |
| Submitted on Briefs: | May 13, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ana L. Babcock* of *Babcock Law, LLC*, Green Bay. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Chuck M. Stertz*, Outagamie County assistant district attorney.<br><br>A nonparty brief was filed by *Robert S. Driscoll* and *Malinda J. Eskra* of *Reinhart Boerner Van Deuren s.c.*, Milwaukee, for Apartment Association of Southeastern Wisconsin, Inc.<br><br>A nonparty brief was filed by *Joshua L. Kaul*, attorney general, and *Gabe Johnson-Karp* and *Robert B. Bresette*, assistant attorneys general. |

A nonparty brief was filed by *Attorney Mitch*, Madison, for Neighborhood Law Clinic.

COURT OF APPEALS
DECISION
DATED AND FILED

May 19, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2340-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CM721

IN COURT OF APPEALS

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TROY R. LASECKI,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Judgment reversed; order affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Troy Lasecki appeals a judgment convicting him of two misdemeanor counts of engaging in unfair trade practices and an order denying his motion for postconviction relief. A jury found Lasecki guilty of failing either to

return the entire security deposits to two of his former tenants or to provide statements to those tenants explaining why he was authorized to withhold their respective security deposits. He raises multiple arguments on appeal: (1) the circuit court lacked subject matter jurisdiction because the crimes of which Lasecki was convicted are "not known to law"; (2) if Lasecki's conduct did constitute a crime, no ordinary person would have sufficient notice that his conduct was criminal; (3) the jury instructions in his case incorrectly stated the law regarding his charged crimes; and (4) the court impermissibly ordered restitution above the victims' pecuniary losses.

¶2 We conclude the circuit court had subject matter jurisdiction over this case. We further conclude that an ordinary person, acting as a residential landlord, would have sufficient notice that it can be a criminal unfair trade practice for a landlord either to withhold amounts of a tenant's security deposit not reasonably necessary to pay for items authorized by statute or to fail to provide a tenant with a security deposit withholdings statement if some or all of a security deposit is withheld. Accordingly, we affirm those parts of the postconviction order consistent with these conclusions. We agree with Lasecki, however, that the jury instructions in his case were erroneous because they did not correctly state the law. We also agree with Lasecki that the court erred by ordering restitution above the victims' pecuniary losses. For these reasons, we reverse the judgment of conviction and reverse the postconviction order in part, and we remand for further proceedings consistent with our statutory analysis herein.

## BACKGROUND

¶3      Two former tenants of Lasecki's, Ben and Jim,[1] complained to the Wisconsin Department of Agriculture, Trade and Consumer Protection (the "DATCP") alleging that Lasecki withheld their respective security deposits and failed to provide them with statements explaining why he was withholding their security deposits (hereafter, "withholdings statements").  An investigator with the DATCP looked into those complaints.

¶4      After Lasecki failed to cooperate with the DATCP's investigation, the local district attorney's office became involved.  The State eventually charged Lasecki with two criminal counts.  In the criminal complaint, the State labeled the two counts as "returning security deposits," alleging that Lasecki failed "to deliver or mail to a tenant … the full amount of any security deposit paid by the tenant, less any authorized withholdings, within 21 days after the termination of the rental agreement."  As relevant here, the complaint stated Lasecki's failures violated WIS. ADMIN. CODE § ATCP 134.06(2) (Aug. 2016), and WIS. STAT. §§ 100.20(2) and 100.26(3) (2013-14).[2]  The matter proceeded to a jury trial at which Lasecki appeared pro se.

¶5      Ben and Jim both testified at trial that they paid Lasecki a security deposit and that he never returned their deposits after their residential leases ended.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2017-18), we refer to the victims by using pseudonyms.

[2] All references to the Wisconsin Administrative Code are to the August 2016 register unless otherwise noted.  All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.  We refer to these past versions of the administrative code and the statutes because they represented the applicable law and regulations at the time of Lasecki's conduct and the parties use these past versions in their appellate arguments.

Ben and Jim also testified that Lasecki never provided them with withholdings statements explaining why he was authorized to retain their security deposits.

¶6      Lasecki testified in his own defense.  He testified that he had been "in business for over 22 years" and that he "stud[ied] real estate and real estate brokerage into the intermingling of the real estate profession."  Lasecki admitted that he withheld Ben's and Jim's entire security deposits.  Further, Lasecki did not dispute that he never sent Ben and Jim withholdings statements.  Lasecki testified that "as far as [he knew]," he sent an "e-mail confirmation" to Ben explaining to him that his security deposit would not be returned.  When the State reminded Lasecki that his testimony was under oath, Lasecki testified: "I guess you can't prove that[.]…  As far as I know, I sent it but I guess how would you prove that?"

¶7      The jury found Lasecki guilty of both counts.  The circuit court stayed Lasecki's sentence and placed him on probation for two years with a number of conditions.  As relevant to this appeal, the court imposed sixty days in the county jail and ordered Lasecki to pay Ben $1460—twice his $730 security deposit—and Jim $1680—twice his $840 security deposit—in restitution.[3]  The court concluded Lasecki owed Ben and Jim double their security deposits because "the statutes and the code in … Wisconsin allow for double damages when a landlord violates that section of the code."

¶8      Lasecki subsequently retained counsel and filed a motion for postconviction relief.  As grounds for relief, Lasecki alleged: (1) the circuit court lacked subject matter jurisdiction over the case because "the offenses charged are not known to law"; (2) he "was denied [his] due process [right] to sufficient notice

---

[3] After Lasecki served fourteen days in jail and paid all of the restitution and fines, the circuit court stayed his remaining jail time.

that his conduct constituted a crime"; and (3) "the court impermissibly ordered restitution above the victims' pecuniary loss[es]." The court denied Lasecki's motion, and he now appeals.[4]

## DISCUSSION

¶9 On appeal, Lasecki raises the same three issues he did in his postconviction motion. He also argues that the jury instructions in this case were improper, which we construe as a variation of the arguments he raised postconviction. We first address Lasecki's assertion that the circuit court lacked jurisdiction over the matter and his alternative argument that he was deprived due process of law. We combine these issues as both the arguments regarding the issues, and our disposition of them, substantially overlap.

*I. Subject Matter Jurisdiction and Due Process*

¶10 Criminal subject matter jurisdiction is a court's power "to inquire into the charged crime, to apply the applicable law and to declare the punishment." *State v. Webster*, 196 Wis. 2d 308, 316, 538 N.W.2d 810 (Ct. App. 1995) (citation omitted). A court lacks such subject matter jurisdiction, however, when the State charges an individual with a nonexistent crime. *See State v. Scott*, 2017 WI App 40, ¶11, 376 Wis. 2d 430, 899 N.W.2d 728. Whether a circuit court has subject matter jurisdiction is a question of law that we review de novo. *See id.*, ¶12.

---

[4] This appeal was converted from a one-judge appeal to a three-judge appeal by the April 24, 2020 order of the Chief Judge of the Court of Appeals. *See* WIS. STAT. § 752.31(3) (2017-18); WIS. STAT. RULE 809.41(3) (2017-18).

At our request, the Wisconsin Attorney General, University of Wisconsin Law School, and Apartment Association of Southeastern Wisconsin submitted amicus briefs in this appeal. We thank each entity for their participation in this matter.

¶11 Procedural due process's "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). Put another way: "The underlying principle is that no [person] shall be held criminally responsible for conduct which he [or she] could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). The void-for-vagueness doctrine is driven by notions of fair play—i.e., "a statute is void for vagueness if it does not provide 'fair notice' of the prohibited conduct." *State v. Smith*, 215 Wis. 2d 84, 91, 572 N.W.2d 496 (Ct. App. 1997). The interpretation of a statute and whether the crime with which the State charges a defendant comports with due process are questions of law that we review independent of the circuit court. *See id.* at 90.

### a. Lasecki's Arguments Regarding Subject Matter Jurisdiction and Due Process

¶12 Lasecki argues the State "created" the crime of which he was charged and convicted "by attempting to apply the criminal penalties contained within WIS. STAT. § 100.26(3)" to a violation of WIS. ADMIN. CODE § ATCP 134.06. He first asserts that when a landlord determines he or she is authorized by statute to withhold money from a tenant's security deposit, no law—by which he means a statute— requires the landlord to provide a tenant with any withholdings statement. Relatedly, he maintains that notwithstanding the requirements of security deposit withholdings statements stated in § ATCP 134.06(4), the legislature's omission of those requirements in WIS. STAT. § 704.28 means the legislature has eliminated any legal requirement for landlords to provide such statements, especially given certain language in WIS. STAT. § 704.95.

6

¶13     Lasecki alternatively argues that he cannot be held criminally liable for failing to comply with WIS. ADMIN. CODE § ATCP 134.06(4) because no ordinary person could know of such potential liability.  He asserts that a due process violation occurred because in order to determine whether he or she is subject to criminal liability, an ordinary person acting as a residential landlord would have to navigate "through a maze of complex and confusing logic … by combining several obscure statutes and code regulations."  Therefore, Lasecki maintains that "[a]n ordinary person would have insufficient notice that Lasecki's conduct constituted a crime."

¶14     We reject Lasecki's arguments.  For the reasons explained below, we conclude that an ordinary person—here, a reasonably prudent landlord[5]—would be able to understand, by reviewing the relevant statutes and administrative code provisions, that upon withholding some or all of a tenant's security deposit, the landlord may be held criminally liable for failing to provide a tenant with a statement of withholdings.  To best understand the contours of Lasecki's arguments and our analysis, we begin by outlining the relevant statutory and administrative code provisions.

   b.  *Language of the Relevant Statutory and Administrative Code Provisions*

---

[5] Procedural due process's void-for-vagueness doctrine uses an "ordinary person" standard.  *See* **Beckles v. United States**, 137 S. Ct. 886, 892 (2017).  WISCONSIN ADMIN. CODE § ATCP 134.01(5) defines a landlord as "the owner or lessor of a dwelling unit under any rental agreement," meaning any person can be a landlord provided he or she enters into a rental agreement with another person.  However, because only landlords are subject to the applicable laws and regulations at issue in this case, we believe the "ordinary person" standard means, here, an "ordinary landlord."  Moreover, because the law considers an ordinary person to be someone who has a reasonable understanding of laws proscribing certain conduct, *see, e.g.*, **State v. Heredia**, 172 Wis. 2d 479, 488, 493 N.W.2d 404 (Ct. App. 1992) (quoting **United States v. Harriss**, 347 U.S. 612, 617 (1954)), and is prudent, *see, e.g.*, **Schulz v. St. Mary's Hosp.**, 81 Wis. 2d 638, 647, 260 N.W.2d 783 (1978), as a transitive property, we generally refer in this opinion to "a reasonably prudent landlord."

7

¶15    WISCONSIN STAT. ch. 704, titled "Landlord and Tenant," contains WIS. STAT. § 704.28, which is itself titled "Withholding from and return of security deposits." Section 704.28(1) provides: "When a landlord returns a security deposit to a tenant after the tenant vacates the premises, the landlord may withhold from the full amount of the security deposit only amounts reasonably necessary to pay for any of the following [categories of authorized withheld costs]." Additionally, § 704.28(4) instructs that a landlord "shall deliver or mail to a tenant the full amount of any security deposit paid by the tenant, less any [statutorily authorized amounts], within 21 days." In general, § 704.28 legislatively codifies the categories of incurred costs landlords can lawfully withhold from security deposits, as well as the timing requirements within which landlords shall return security deposits. Section 704.28 makes no mention, however, of withholdings statements.

¶16    WISCONSIN STAT. § 704.95 is titled "Practices regulated by the department of agriculture, trade and consumer protection." It provides:

> Practices in violation of s. 704.28 … may also constitute unfair methods of competition or unfair trade practices under s. 100.20. However, the department of agriculture, trade and consumer protection may not issue an order or promulgate a rule under s. 100.20 that changes any right or duty arising under this chapter.

¶17    WISCONSIN ADMIN. CODE ch. ATCP 134 is titled "Residential Rental Practices." Of particular relevance to this case is WIS. ADMIN. CODE § ATCP 134.06, "Security deposits." Section ATCP 134.06(4)(a) provides, in relevant part: "If any portion of a security deposit is withheld by a landlord, the landlord shall … deliver or mail to the tenant a written statement accounting for all amounts withheld." Meanwhile, WIS. ADMIN. CODE § ATCP 134.01, which is titled "Scope and application" and introduces ch. ATCP 134, provides that the "chapter is adopted under authority of [WIS. STAT. §] 100.20."

8

¶18    WISCONSIN STAT. § 100.20 generally provides that "[u]nfair methods of competition in business and unfair trade practices in business are hereby prohibited." Sec. 100.20(1). It then describes the process for the DATCP to regulate business or trade practices: "The department, after public hearing, may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." Sec. 100.20(2)(a).

¶19    Finally, WIS. STAT. § 100.26 sets forth the penalties for violations of WIS. STAT. ch. 100. As relevant here, § 100.26(3) provides:

> Any person … who intentionally refuses, neglects or fails to obey any regulation or order made or issued under s. 100.19 or 100.20, shall, for each offense, be fined not less than $25 nor more than $5,000, or imprisoned in the county jail for not more than one year or both.

### c. History of the Relevant Statutory and Administrative Code Provisions

¶20    The DATCP created WIS. ADMIN. CODE ch. ATCP 134 in 1980, and it did so, in large part, to protect residential tenants. Prior to 1980, the DATCP conducted a study and found that security deposit disputes ranked as the highest category of landlord-tenant complaints it received. WIS. DEP'T OF AGRIC., TRADE AND CONSUMER PROT., LANDLORD-TENANT REPORT, at 47 (Dec. 1, 1978). The report concluded this high number of complaints was likely the result of both Wisconsin lacking any meaningful penalties for security deposit misconduct and that the existing dispute resolution mechanisms at the time deterred tenants from vindicating their rights. *Id.* at 9, 56-57. Accordingly, by general order in 1980, the DATCP created what is known today as ch. ATCP 134. *See* 290 WIS. ADMIN. REG. 1 (Feb. 29, 1980).

¶21    The duty of a landlord to provide a tenant with a withholdings statement has been prescribed by the DATCP since WIS. ADMIN. CODE ch. ATCP 134's inception. *See* WIS. ADMIN. CODE § Ag 134.06(4) (Feb. 1980). Likewise, the same provisions in WIS. STAT. ch. 100 governing unfair trade practices and potential criminal penalties for such violations that exist today were in effect when ch. ATCP 134 was created. *Compare* § Ag 134.06(4) (Feb. 1980), *with* WIS. STAT. §§ 100.20(1), (2)(a), and 100.26(3) (1979-80).

¶22    In 2012, our legislature enacted 2011 Wis. Act 143, "relating to[] miscellaneous landlord-tenant provisions and prohibiting a local government from imposing a moratorium on eviction actions." 2011 Wis. Act 143 (intro.). This enactment included the aforementioned WIS. STAT. § 704.28 as a new statutory provision governing withholdings from, and the return of, security deposits. *See* 2011 Wis. Act 143, § 22. Section 704.28's language, at its enactment and today, substantially mimics a number of the subsections in WIS. ADMIN. CODE § ATCP 134.06. *Compare* WIS. STAT. § 704.28, *with* WIS. ADMIN. CODE § ATCP 134.06 (Oct. 2004). Of relevance here, the statute substantially used language from § ATCP 134.06(2) and 134.06(3), which had, since 1980, required a landlord to return a security deposit to a tenant within a set number of days after the tenancy ends, subject to certain authorized withholdings for tenant-related expenses, including rent and property damages. Again, § 704.28 did not include § ATCP 134.06(4)'s requirement that landlords provide tenants a written statement of security deposit deductions. In the same bill, the legislature also first enacted the aforementioned WIS. STAT. § 704.95. *See* 2011 Wis. Act 143, § 36.

> d. *Subject Matter Jurisdiction Exists: Wisconsin Law Makes the Failure to Return or Mail a Security Deposit Withholdings Statement an Unfair Trade Practice Subject to Criminal Penalties.*

10

1.  Even if a landlord is permitted to retain some or all of a tenant's security deposit, it is an unfair trade practice not to deliver a written statement accounting for all amounts withheld.

¶23    As an initial matter, we conclude Lasecki is wrong in asserting that when a landlord determines he or she is authorized by statute to withhold money from a tenant's security deposit, no "law" requires the landlord to provide that tenant with any withholdings statement.  Rather, standing alone, WIS. ADMIN. CODE § ATCP 134.06(4) plainly imposes that requirement if the landlord wishes to withhold any amount of a tenant's security deposit.  Moreover, any landlord who "intentionally refuses, neglects or fails to obey" § ATCP 134.06, including subsec. (4)'s provisions regarding withholdings statements, could be subject to criminal prosecution and certain enumerated ranges of punishment.  *See* WIS. STAT. § 100.26(3); *cf.* ***State v. LaPlant***, 204 Wis. 2d 412, 417-19, 555 N.W.2d 389 (Ct. App. 1996) (illustrating an example of the State prosecuting a landlord for a violation of WIS. ADMIN. CODE ch. ATCP 134).  Lasecki is thus also incorrect in saying that a crime was "created" in this case, at least in relation to his failures to deliver withholdings statements.

¶24    Still, Lasecki argues that the "rules of statutory construction" prohibit the criminal penalties of WIS. STAT. § 100.26(3) from applying to violations of WIS. ADMIN. CODE § ATCP 134.06.  Specifically, he contends that § ATCP 134.06 is not a "general order" issued by the DATCP permitting or forbidding fair trade practices under WIS. STAT. § 100.20(2)(a).  Rather, citing to ***Moonlight v. Boyce***, 125 Wis. 2d 298, 303, 372 N.W.2d 479 (Ct. App. 1985), Lasecki asserts § ATCP 134.06 is only a "regulation."  Lasecki therefore maintains that his alleged violation of § ATCP 134.06 cannot result in criminal liability under WIS. STAT. ch. 100 because: (1) criminal liability in this instance occurs upon a violation of ch. 100;

(2) the legislature only permits the DATCP to promulgate general orders under § 100.20(2)(a); and (3) § ATCP 134.06 is a "regulation" and not an "order."

¶25 Lasecki's argument lacks merit for at least two reasons. First, *Moonlight* does not stand for the proposition Lasecki claims. *Moonlight* merely recognizes that in questions of statutory interpretation, "[a]dministrative rules and regulations are construed in the same manner as statutes." *Moonlight*, 125 Wis. 2d at 303. It does not hold that administrative code provisions are considered only to be "regulations." In fact, *Moonlight* consistently refers to the administrative code section at issue in that case—a prior version of WIS. ADMIN. CODE § ATCP 134.06—as an "order." *See Moonlight*, 125 Wis. 2d at 304, 306.

¶26 Second, WIS. ADMIN. CODE § ATCP 134.06 is the result of a "general order" promulgated by the DATCP for a more fundamental reason. Similar to how the legislature passes acts to revise the Wisconsin Statutes, departments of Wisconsin government order rules and regulations to be published in each register of the administrative code. *See, e.g.*, 728B WIS. ADMIN. REG. CR No. 16-012 (Aug. 29, 2016) (titled "ORDER OF THE WISCONSIN DEPARTMENT OF AGRICULTURE TRADE AND CONSUMER PROTECTION ADOPTING RULES"). Accordingly, rules and regulations become a part of the administrative code by orders of the respective department adopting such rules or regulations. Section ATCP 134.06 is therefore the result of an "order" under WIS. STAT. § 100.20(2)(a), a violation of which can result in criminal liability under WIS. STAT.

ch. 100.[6] *See LaPlant*, 204 Wis. 2d at 421-22 (recognizing that § 100.20 provides the DATCP with authority to promulgate WIS. ADMIN. CODE ch. ATCP 134); *see also* WIS. STAT. § 227.01(13) (defining "[r]ule" to include "general order[s]").

> 2. <u>The enactments of WIS. STAT. §§ 704.28 and 704.95 did not abrogate the DATCP's authority to deem a landlord's failure to provide a withholdings statement an unfair trade practice subject to criminal liability</u>.

¶27    Beyond the foregoing, both Lasecki and amicus Apartment Association of Southeastern Wisconsin, Inc., (the "Association") assert that the omission of a withholdings statement requirement in WIS. STAT. § 704.28 means that the legislature "rejected" or "usurped" the DATCP's authority to prescribe that requirement for landlords. Their principal argument is based on language in WIS. STAT. § 704.95 stating that the DATCP cannot "change[] any right or duty arising under this chapter."

¶28    Lasecki and the Association contend that WIS. ADMIN. CODE § ATCP 134.06 "changes" a landlord's duties in WIS. STAT. ch. 704 because § ATCP 134.06(4)(a) additionally requires a landlord to provide a tenant with a withholdings statement when ch. 704—and more specifically, WIS. STAT. § 704.28—is silent on that issue. This "change" is prohibited, Lasecki argues, because § 704.28 gives him the right to retain a security deposit for any of the purposes enumerated in the statute and allows him to do so without providing any

---

[6] This conclusion recognizing the DATCP's rulemaking authority is buttressed by the introductory notes to WIS. ADMIN. CODE ch. ATCP 134 and § ATCP 134.01, both of which note that the "chapter is adopted under the authority of s. 100.20, Stats." *See also Baierl v. McTaggart*, 2001 WI 107, ¶¶13, 23-25, 245 Wis. 2d 632, 629 N.W.2d 277 (observing that § 100.20 is an "enabling statute" in which the DATCP "is given the mandate of promulgating rules … to proscribe specific unfair trade practices").

withholdings statements. While we agree with Lasecki regarding the former proposition, he is incorrect regarding the latter one.

¶29    Lasecki's interpretation of WIS. STAT. § 704.95 runs afoul of its plain meaning and is not supported by the history and purpose of modern landlord-tenant law in Wisconsin. Our canons of statutory interpretation are well known, *see, e.g.*, *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶¶44-51, 271 Wis. 2d 633, 681 N.W.2d 110, and need not be repeated here, although we touch on some specific rules below.

¶30    WISCONSIN ADMIN. CODE § ATCP 134.06(4) does not "change" any right or duty "arising" under WIS. STAT. ch. 704. We give statutory language its common, ordinary and accepted meaning. *Kalal*, 271 Wis. 2d 633, ¶45. To help establish the common, ordinary and accepted meaning of an undefined term, we can look to a recognized dictionary. *See Brown Cty. Human Servs. v. B.P.*, 2019 WI App 18, ¶12, 386 Wis. 2d 557, 927 N.W.2d 560. "Change," as relevant here, means "to make different in some particular : alter." *Change*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). "Arise" means "to originate from a specified source." *Arise*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).

¶31    Accordingly, WIS. STAT. § 704.95 prohibits the DATCP from making different any right or duty originating from WIS. STAT. ch. 704. As relevant here regarding security deposits, those rights or duties in WIS. STAT. § 704.28 pertain only to the incurred costs a landlord can lawfully withhold from a tenant's security deposit and the time within which a landlord must return that deposit. By Lasecki's own admission, any obligation of a landlord to provide a withholdings statement to a tenant arises only under WIS. ADMIN. CODE § ATCP 134.06(4). Given that ch. 704 is silent on the topic of withholdings statements, nothing in

§ ATCP 134.06(4) regarding withholdings statements "alters" or "makes different" anything originating from ch. 704. Section 704.95 thus has no bearing on the DATCP's rulemaking authority over that subject matter. Notably, neither Lasecki nor the Association provides any case law refuting these notions.[7]

¶32 Furthermore, we reject Lasecki's apparent premise that if a landlord correctly determines he or she is authorized to withhold sums from a tenant's security deposit, then the landlord need not provide that tenant with a withholdings statement. That premise makes little sense. The independent requirement of providing a withholdings statement is the only means by which a tenant can learn why the landlord did not return some or all of the security deposit—short of the tenant either commencing litigation and serving discovery on the landlord or asking the DATCP to investigate. Lasecki's position ignores the fact that it is only with knowledge of why security deposit money was withheld that a tenant can reasonably assess the merit of the withholdings and whether to challenge them.[8] We are not inclined to adopt Lasecki's statutory construction arguments absent a clear legislative intent to abandon this important requirement in the administrative code requiring a landlord provide a withholdings statement, which dates back decades.

¶33 To the contrary, our interpretation of the interplay between WIS. STAT. § 704.95 and WIS. ADMIN. CODE § ATCP 134.06 is supported by the language of other statutes relating to the landlord-tenant relationship, WIS. STAT.

---

[7] Moreover, Lasecki and the Association's interpretation of WIS. STAT. § 704.95 would lead to absurd results, contravening the rules of statutory interpretation. *See State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. If Lasecki and the Association's interpretation were correct, there would be no administrative rule related to landlord-tenant law that the DATCP could validly promulgate that did not mirror something already existing in the statutes. This result is untenable, which further weakens their position.

[8] The requirement to provide withholdings statements may also serve to protect landlords, as the landlord's giving notice of the basis for a withholding potentially prevents lawsuits against him or her, or provides a basis to resolve any dispute short of litigation.

§§ 66.0104(2)(b) and 66.1010, showing that the legislature did not intend for § 704.95 to invalidate existing DATCP rules and regulations in ch. ATCP 134. Because context is "important" to a statute's plain meaning, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." *Kalal*, 271 Wis. 2d 633, ¶46. In the same vein, courts read, apply, and construe together statutes and regulations relating to the same subject matter or having a common purpose under the doctrine of *in pari materia*. *See Winebow, Inc. v. Capitol-Husting Co.*, 2018 WI 60, ¶30 & n.6, 381 Wis. 2d 732, 914 N.W.2d 631 (citing *State v. Jeremiah C.*, 2003 WI App 40, ¶17, 260 Wis. 2d 359, 659 N.W.2d 193). That doctrine applies with particular force to statutory provisions enacted in the same legislative act on the same subject. *Waranka v. Wadena Ins. Co.*, 2014 WI 28, ¶17, 353 Wis. 2d 619, 847 N.W.2d 324.

¶34 WISCONSIN STAT. § 66.0104 was enacted three months prior to WIS. STAT. § 704.95. *Compare* 2011 Wis. Act. 108, § 1, *with* 2011 Wis. Act. 143, § 36. In relevant part, it prohibits local ordinances from imposing security deposit requirements "that are additional to the requirements under administrative rules related to *residential rental practices*"—e.g., WIS. ADMIN. CODE ch. ATCP 134, which itself is titled "Residential Rental Practices." *See* § 66.0104(2)(b) (emphasis added). The statute also provides that any ordinance that is "inconsistent with" subsec. (2)(b) "does not apply and may not be enforced." Sec. 66.0104(3)(a).

¶35 WISCONSIN STAT. § 66.0104 relates to the same subject matter and has a common purpose as WIS. STAT. §§ 704.28 and 704.95, and we therefore find the statutory language within § 66.0104 relevant here for two reasons. *See Winebow*, 381 Wis. 2d 732, ¶30 & n.6. As demonstrated by § 66.0104(2)(b), the legislature apparently intended that residential rental practices would continue to be

16

regulated by the DATCP and WIS. ADMIN. CODE ch. ATCP 134. Further, § 66.0104(3)(a) illustrates an example of when the legislature clearly intended to limit the scope of another government entity's ability to create additional duties to those found in a certain source. Had the legislature intended to alter the DATCP's authority to enforce its existing landlord-tenant rules and regulations, we believe it would have done so by including language in § 704.95 comparable to that found in § 66.0104(3)(a).

¶36 WISCONSIN STAT. § 66.1010 is similarly instructive, and even more so, as it was enacted contemporaneously with WIS. STAT. § 704.95. *See* 2011 Wis. Act. 143, §§ 1, 36. Section 66.1010(2) prohibits political subdivisions from enacting or enforcing "an ordinance that imposes a moratorium on a landlord from pursuing an eviction action … against a tenant of the landlord's residential property." Subsection (3) further provides that if a political subdivision had an ordinance in effect that was "inconsistent" with subsec. (2) on March 31, 2012, that "ordinance does not apply and may not be enforced." Section 66.1010 demonstrates again that had the legislature wanted to prevent the enforcement of WIS. ADMIN. CODE § ATCP 134.06(4) through the passage of § 704.95, the legislature would have included similar explicit language there as it did in § 66.1010.

¶37 Given the foregoing, we cannot conclude the legislature obliquely "usurped" the DATCP's authority to require, as a method of fair trade practices, that

landlords provide withholdings statements.[9] The more reasonable conclusion is that the drafters of 2011 Wis. Act. 143, which enacted WIS. STAT. §§ 704.28 and 704.95, intended for those statutes to work in harmony with those parts of WIS. ADMIN. CODE ch. ATCP 134 not legislatively touched upon—a conclusion which, again, we partially derive from ch. ATCP 134 predating §§ 704.28 and 704.95 by over thirty years. *Compare* 290 WIS. ADMIN. REG. 1 (Feb. 29, 1980), *with* 2011 Wis. Act. 143. This conclusion is consistent with the drafters' recognition that they would be "copying" some of the DATCP's administrative rules into the statute. E-mail from Bob Welch to Lauren Kiesow and Robert Kovach, Wis. Legis. Bureau (Feb. 27, 2012, 10:06 AM CST) (available in drafting file for 2011 Wis. Act 143 on page fourteen).[10] The legislature simply deemed certain requirements regarding security deposits important enough to legislatively codify within WIS. STAT. ch. 704, and it is only those requirements that the DATCP can no longer alter by administrative action.

¶38    In his reply to the amici curiae, Lasecki contends that consulting the legislative history we described above is improper because WIS. STAT. § 704.95 is unambiguous. For reasons explained previously, we agree that WIS. STAT. § 704.95 is unambiguous, albeit for different reasons than Lasecki argues. Nonetheless, "legislative history is sometimes consulted to confirm or verify a plain-meaning

---

[9] Lasecki contends that we "recently questioned whether the DATCP retains authority to regulate the withholding and return of security deposits since the enactment of WIS. STAT. §§ 704.28 and 704.95" in *Wenger v. Swaine*, No. 2017AP985, unpublished slip op. ¶¶7-11 (WI App Feb. 8, 2018). Lasecki's contention is embellished, at best. The paragraphs he cites discuss the interplay between § 704.95 and WIS. ADMIN. CODE § ATCP 134.06 in the context of whether a circuit court has discretion to order double damages and attorney's fees to a tenant under WIS. STAT. § 100.20(5). *See Wenger*, No. 2017AP985, ¶¶7, 10-11. We do not read *Wenger* in the same light as Lasecki.

[10] https://docs.legis.wisconsin.gov/2011/related/drafting_files/wisconsin_acts/2011_act_143_sb_466/03_ssa1_sb466/11s0335df_pt03of03.pdf (last visited May 6, 2020).

interpretation." ***Kalal***, 271 Wis. 2d 633, ¶51. As ***Kalal*** makes clear, statutory language need not be ambiguous for us to consult legislative history.

> ### *e. Due Process Was Afforded: An Ordinary Landlord Would Have Sufficient Notice that Lasecki's Conduct Constituted a Crime.*

¶39    The residential landlord-tenant relationship occurs within a regulated industry, including (and as explained above) one that the DATCP has extensively regulated since 1980. Accordingly, persons choosing to enter that enterprise are expected, at a minimum, to consult the most relevant portions of the Wisconsin Statutes and the administrative code. Even Lasecki and the Association agree that a reasonably prudent landlord would commonly consult WIS. STAT. ch. 704, titled "Landlord and Tenant." At the same time, a reasonably prudent landlord would also appreciate that he or she needs to understand regulations set forth by WIS. ADMIN. CODE ch. ATCP 134, which is titled "Residential Rental Practices."

¶40    We have already discussed, rather extensively, the relevant substantive provisions regarding a landlord's obligations with respect to security deposits—namely, WIS. STAT. § 704.28 ("Withholding from and return of security deposits"); WIS. ADMIN. CODE § ATCP 134.06 ("Security deposits"); WIS. STAT. § 704.95 ("Practices regulated by the [DATCP]")—including withholdings statements in particular (namely, § ATCP 134.06(4) ("Security deposit withholding: Statement of claims")).[11] We see no need to repeat the relevant language here. Suffice it to say, a reasonably prudent landlord would be able to locate these provisions and understand their meanings, which are plain. Indeed, neither Lasecki nor the Association actually endeavor to argue otherwise, save

---

[11] In particular, see *supra*, ¶¶15-17.

perhaps for § 704.95.[12] Rather, Lasecki and the Association seem primarily to argue that a landlord has not been provided sufficient notice that his or her failure to comply with these requirements could result in a violation of WIS. STAT. § 100.20 as an unfair business or trade practice and, therefore, could be criminally prosecuted.

¶41 We disagree. Rather, a reasonably prudent landlord's consultation of WIS. ADMIN. CODE ch. ATCP 134 should lead to such knowledge. As an initial matter, the chapter begins with a prefatory note that is relevant to this issue:

> *Note: This chapter is adopted under authority of [WIS. STAT. §] 100.20(2) …* and is administered by the [DATCP]. *Violations of this chapter may be prosecuted under* [§§] 100.20(6), *100.26(3)* or (6) …. A person who suffers a monetary loss because of a violation of this chapter may sue the violator directly under [§] 100.20(5) … and may recover twice the amount of the loss, together with costs and reasonable attorneys' fees.

Department of Agric., Trade and Consumer Prot. Note, Aug. 2016, WIS. ADMIN. CODE § ATCP 134.06 (emphases added). This language immediately provides notice that *any* violation of ch. ATCP 134 may result in criminal prosecution. Moreover, just below the prefatory note, WIS. ADMIN. CODE § ATCP 134.01—i.e., the very first section of the code chapter—provides that the "chapter is adopted under authority of [WIS. STAT. §] 100.20." Meanwhile, § 100.20 itself includes a cross-reference that directs the reader to various chapters of the administrative code, including ch. ATCP 134.

¶42 We reject the notion that a reasonably prudent landlord under these circumstances should not be expected to review, at a minimum, WIS. STAT.

---

[12] The "confusion" or ambiguity that Lasecki asserts regarding WIS. STAT. § 704.95 seems only to be the result of reading multiple statutes and regulations to determine the criminal liability for a landlord failing to provide a withholdings statement. Lasecki does not appear to assert that § 704.95 itself is confusing or ambiguous. *See supra*, ¶38.

§§ 100.20 and 100.26(3). The landlord would have reason to review § 100.26 not only because the prefatory note in WIS. ADMIN. CODE ch. ATCP 134 references § 100.26(3), but also because WIS. STAT. ch. 100's table of contents notes the section governing "penalties" as § 100.26. Once arriving there, § 100.26(3) plainly provides, in relevant part:

> *Any person* … who intentionally refuses, neglects or fails to obey *any regulation or order* made or issued under s. 100.19 or *100.20*, *shall*, for each offense, be fined not less than $25 nor more than $5,000, or imprisoned in the county jail for not more than one year or both.

(Emphases added.)

¶43    Our preceding analysis illustrates that Lasecki's due process "notice" argument lacks merit. While a reasonably prudent landlord is required to navigate different statutory and administrative provisions, we disagree with Lasecki and the Association that the foregoing review is beyond the comprehension of landlords, such that they have not been provided with "fair notice."[13]   Accordingly, the statutory scheme permitting the criminal prosecution of a landlord for failing to

---

[13] The Association raises concerns that our holding will lead to the "absurd result" of opening "small mom and pop landlords," in particular, to vast amounts of criminal liability. The Association's concerns are overstated and ignore the fact that, no matter the scale of operation, landlords inherently possess greater power in the landlord-tenant relationship. WISCONSIN STAT. ch. 704 and WIS. ADMIN. CODE ch. ATCP 134 provide a necessary check to this power imbalance. We also observe that in the instant case, Lasecki refused to cooperate with a DATCP investigation before the district attorney's office became involved. Notably, charging entities across the state have prosecutorial discretion in deciding which factual circumstances may warrant criminal prosecution. *See Kalal*, 271 Wis. 2d 633, ¶30.

deliver a withholdings statement to a residential tenant is not void for vagueness and comports with due process in this regard.[14]

## II. *The Jury Instructions*

¶44    Lasecki next argues that the jury instructions in his case incorrectly stated the law of his charged crimes.  The jury instructions defined the elements of Lasecki's charged crimes of "returning security deposits" as follows:

1.  The defendant was a landlord.

2.  The defendant rented an apartment to the tenant.

3.  The defendant collected a security deposit from the tenant.

4.  The defendant did not return the security deposit and/or a statement of withholdings within 21 days after the termination of the rental agreement.

5.  The defendant intentionally failed to return the security deposit to the tenant.

¶45    Lasecki asserts that, beyond the overall vagueness of the charged crimes discussed above, the jury was never instructed to assess whether he was authorized by statute to withhold Ben's and Jim's security deposits.[15]  Because the

---

[14] The State's argument is well taken that the statutory scheme criminalizing Lasecki's conduct is less complex than the schemes governing other crimes, including some frequently charged crimes.  For example, knowing that possession of narcotic pain medications—e.g., Oxycodone—without a prescription is a crime requires a person to understand the interplay between WIS. STAT. §§ 961.01, 961.14, 961.16, and 961.41.  That person would then need to read WIS. STAT. §§ 939.50, 939.62, 939.632, 961.48, 961.495, and 961.50 to learn the maximum and minimum penalties for that crime because the penalties vary depending on prior offenses and the location where that person committed the crime.

[15] On the day of trial, Lasecki objected "to the form" of the jury instructions.  We deem Lasecki's pro se objection as sufficient to preserve the issue for our review, especially given the lack of any argument from the State asserting otherwise.

jury instructions erroneously defined the crimes with which he was charged, Lasecki argues the State failed to meet its burden of proof as a matter of law.

¶46    The purpose of jury instructions is to "fully and fairly" inform the jury of a rule or legal principle applicable to a particular case. *State v. Hubbard*, 2008 WI 92, ¶26, 313 Wis. 2d 1, 752 N.W.2d 839. We review jury instructions "as a whole to determine whether 'the overall meaning communicated by the instructions was a correct statement of the law.'" *Dakter v. Cavallino*, 2015 WI 67, ¶32, 363 Wis. 2d 738, 866 N.W.2d 656 (quoting *Fischer v. Ganju*, 168 Wis. 2d 834, 850, 485 N.W.2d 10 (1992)). Although the circuit court has "broad discretion" in crafting jury instructions based on the facts and circumstances of a case, we independently determine whether the court erred by stating the law incorrectly or in a misleading manner. *See id.*, ¶¶31-32.

¶47    If we conclude jury instructions were erroneous, a defendant is not entitled to reversal and a new trial unless the error is prejudicial. *Id.*, ¶33. An error is prejudicial if it "probably and not merely possibly misled the jury." *Fischer*, 168 Wis. 2d at 850. Whether an error is prejudicial is a question of law, also subject to our independent review. *Dakter*, 363 Wis. 2d 738, ¶33.

¶48    We agree with Lasecki that the jury instructions leading to his conviction were erroneous, albeit for reasons different than those he advances. Lasecki generally contends that the jury instructions were erroneous because he was prosecuted for a crime that does not exist. As the preceding analysis should make clear, however, a landlord's failure to provide a tenant with a security deposit withholdings statement can be a crime in and of itself, irrespective of whether the landlord was actually authorized by statute to keep any or all of the tenant's security

deposit. We therefore reject Lasecki's argument that the jury instructions were erroneous in this regard.

¶49 Nonetheless, we conclude that the jury instructions—in particular, numbers four and five of the elements defining the crime—did not accurately state the law and, consequently, probably misled the jury. Specifically, numbers four and five could be reasonably interpreted to mean that a landlord is criminally liable for failing to return a security deposit, without more. However, the failure to return a security deposit, in and of itself, is not necessarily a crime. A landlord is permitted to withhold any amount of a tenant's security deposit as long as any withholdings are prescribed by statute or the administrative code. *See* WIS. STAT. § 704.28(1); WIS. ADMIN. CODE § ATCP 134.06(3). Accordingly, a landlord may be criminally liable only if he or she withholds security deposit money when not authorized to do so. But these issues are independent of, and in addition to, the landlord's duty to provide a tenant with a security deposit withholdings statement if any amount of the tenant's security deposit is withheld.

¶50 Whether Lasecki was authorized to withhold any of Ben's and Jim's security deposits, however, was not squarely presented to the jury. The State contends that any error in the jury instructions was harmless because "the totality of the evidence proved beyond a reasonable doubt that the tenants did not owe unpaid rent." We disagree. While Ben and Jim testified to their interactions, or lack thereof, with Lasecki after they left his apartments, the record is unclear regarding whether Lasecki was authorized to withhold any amounts of their respective security deposits.

¶51 Indeed, the lawfulness of Lasecki's withholdings was not the focal point of the trial; rather, the State focused on whether Lasecki provided Ben and Jim

with statements of withholdings. While we have concluded that such a failure to provide those former tenants with withholdings statements provides for criminal liability, we are unable to discern whether the jury found Lasecki guilty because he did not return the security deposits for unlawful reasons *or* because, upon failing to return the security deposits, he did not provide withholdings statements (or both). The fifth instruction highlights this problem because it only referred to the former and not to the latter—i.e., "[t]he defendant intentionally failed to return the security deposit to the tenant."

¶52    We therefore conclude the jury instructions are erroneous because they combined two separate crimes into one element, and that error prejudiced Lasecki because it probably misled the jury. *See Fischer*, 168 Wis. 2d at 850. By presenting two independent criminal acts in one element, we cannot know the basis on which the jury determined that the State met its burden of proof. Further, we cannot know whether the jury erroneously convicted Lasecki for lawful conduct— i.e., his merely not returning a security deposit, even though the withheld costs were authorized by law. This error also raises questions as to whether the jury instructions comport with Lasecki's right to a unanimous jury verdict. *See, e.g.*, *State v. Derango*, 2000 WI 89, ¶¶13-15, 236 Wis. 2d 721, 613 N.W.2d 833.

¶53    Accordingly, we reverse Lasecki's conviction and a portion of the order denying postconviction relief, and we remand the matter for further proceedings consistent with our above statutory analysis. In this case, as well as in similar cases in the future, the trier of fact is to determine whether the landlord committed an unfair trade practice by either: (1) violating WIS. STAT. § 704.28— including by failing to timely return any portion of a security deposit without having a lawful basis to do so under the statute; (2) violating WIS. ADMIN. CODE

§ ATCP 134.06(4) by failing to provide a required withholdings statement; or (3) violating both requirements.

*III. Restitution*

¶54    Lasecki argues the circuit court erred in the amount of restitution it ordered him to pay.  Given our reversal and remand for further proceedings, we recognize that we need not address this issue.  To further judicial economy, however, we choose to do so, given that the issue is fully briefed and may arise again if the matter is retried.  *See **Hull v. State Farm Mut. Auto. Ins. Co.***, 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998).

¶55    The circuit court ordered Lasecki to pay Ben $1460 in restitution—twice his $730 security deposit—and Jim $1680—twice his $840 security deposit. The court determined Ben and Jim were owed double their security deposits "because the statutes and the code in … Wisconsin allow for double damages when a landlord violates that section of the code."

¶56    WISCONSIN STAT. § 100.20(5) does provide that a tenant "may sue for damages … and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee."  Nonetheless, Lasecki asserts Wisconsin's restitution statute, WIS. STAT. § 973.20 (2017-18),[16] did not authorize the court to impose restitution of twice Ben's and Jim's original security deposit amount because doing so results in "a windfall" to Ben and Jim.

¶57    A request for restitution in a criminal proceeding, including the calculation as to the appropriate amount of restitution, is addressed to the circuit court's discretion, and its decision will only be disturbed when there has been an

---

[16] All references to WIS. STAT. § 973.20 are to the 2017-18 version.

erroneous exercise of that discretion. *State v. Gibson*, 2012 WI App 103, ¶8, 344 Wis. 2d 220, 822 N.W.2d 500. However, whether the circuit court is authorized to order restitution pursuant to WIS. STAT. § 973.20 under a certain set of facts presents a question of law that we review de novo. *Id.*

¶58  WISCONSIN STAT. § 973.20(1r) provides that the circuit court "shall order the defendant to make full or partial restitution … to any victim of a crime considered at sentencing … unless the court finds substantial reason not to do so." As pertinent here, a restitution order may require a defendant to "[p]ay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." Sec. 973.20(5)(a).

¶59  Special damages "encompass 'harm of a more material or pecuniary nature' and represent the victim's actual pecuniary losses." *State v. Holmgren*, 229 Wis. 2d 358, 365, 599 N.W.2d 876 (Ct. App. 1999) (citation omitted). "Any readily ascertainable pecuniary expenditure paid out because of the crime is appropriate as special damages." *Id.* General damages, on the other hand, are those that "compensate the victim for damages such as pain and suffering, anguish or humiliation." *Id.* (citation omitted).

¶60  We agree with Lasecki that the circuit court erroneously exercised its discretion by ordering restitution above Ben's and Jim's actual pecuniary losses. A primary purpose of restitution is not to punish the defendant, but to compensate the victim for his or her actual loss. *See Gibson*, 344 Wis. 2d 220, ¶10. In compensating the victim, the goal is to make the victim whole again. *See id.*, ¶13. We agree with Lasecki that the effect of the court's decision to award as restitution the double damages permitted by WIS. STAT. § 100.20(5) was either to punish Lasecki or to

27

compensate Ben and Jim for a nonpecuniary injury—i.e., general damages—in violation of WIS. STAT. § 973.20.

¶61    We do not find persuasive the State's argument that a tenant's ability to collect double damages in a civil lawsuit under WIS. STAT. § 100.20(5) necessarily means that a circuit court can order a landlord to pay a tenant double his or her pecuniary loss as restitution in a criminal case under WIS. STAT. § 973.20. The State points to nothing in § 973.20 that grants the court authority to order such restitution above a tenant's pecuniary loss.

¶62    We are sympathetic to the State's position that "[r]equiring the victims to file a small claims case to recover what [WIS. STAT. § 100.20(5)] already requires the court to order" may be burdensome on some victims.[17]  Nonetheless, restitution must be authorized by WIS. STAT. § 973.20, as "the legislature has limited the restitution a court may order." *See **Holmgren***, 229 Wis. 2d at 364.  We therefore conclude the circuit court erroneously exercised its discretion in the amount of restitution it ordered Lasecki to pay because the additional $1570 the court ordered in restitution above Ben's and Jim's pecuniary losses violated § 973.20.

## CONCLUSION

¶63    We affirm that part of the postconviction order concluding: (1) a landlord's failure to provide a tenant with a statement of authorized withholdings

---

[17] We recognize there is some dissonance between our holding and what would occur if the matter was litigated by a tenant bringing his or her claim in civil court.  Whatever incongruity exists, however, is not without reason.  While the landlord may face the prospect of paying double damages in a civil case, he or she also would not be confronted with the criminal penalties that do not exist in civil cases.  Additionally, unlike when the State uses its resources to prosecute a landlord, in a civil case it is the tenant who must expend time and resources to bring a claim, for which the double damages provision would apply so as to incentivize and compensate such persons for pursuing that claim.

when retaining some or all of the tenant's security deposit in violation of WIS. ADMIN. CODE § ATCP 134.06(4) is a cognizable crime under Wisconsin law; and (2) Lasecki had "fair notice" his conduct could result in criminal liability, thus comporting with due process. Nevertheless, we conclude Lasecki's conviction must be reversed because the jury instructions were erroneous, and that error prejudiced Lasecki. We also conclude the circuit court erred by requiring Lasecki to pay restitution that exceeded the amounts the tenants paid as their respective security deposits. We therefore reverse Lasecki's judgment of conviction and reverse the postconviction order in part, and we remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed; order affirmed in part; reversed in part and cause remanded with directions.