COURT OF APPEALS
DECISION
DATED AND FILED

May 25, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1548-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF1226

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JOHNATHAN FRANCIS MILLER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: BARBARA W. MCCRORY, Judge. *Affirmed.*

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Johnathan Miller was convicted of false imprisonment as an act of domestic abuse and as a repeater. He and the victim, A.B.,[1] were married at the time of the incident. In this appeal, he challenges the restitution awarded to A.B. His primary contention is that the circuit court erred by including the cost of a security system in the award. Additionally, he argues that the court erred by declining to consider marital property law in determining the amount of the award. We affirm.

¶2 According to the criminal complaint, the police were dispatched to what was at the time Miller and A.B.'s shared residence, after A.B. texted a friend to call 911. A.B. reported to the police that Miller had pushed her down and refused to let her up, that he had pushed her into a wall, and that he had hit her in the face. She also reported that he told her that he would kill her and her entire family if he was sent back to jail.

¶3 Miller was charged with misdemeanor battery, false imprisonment, and disorderly conduct, all as acts of domestic abuse and as a repeater. He pled guilty to the false imprisonment charge, and the remaining charges were dismissed and read in. The circuit court withheld sentence and imposed three years of probation.

¶4 The circuit court held a separate restitution hearing at a later date. At the time, Miller and A.B.'s divorce was pending. A.B. requested restitution for the installation of a security system at the residence that the parties had been

---

[1] To protect the identity of the victim, we refer to her using the letters "A.B." *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

All references to the Wisconsin Statutes are to the 2021-22 version.

sharing at the time of the incident. We refer to this residence as the "marital residence." A.B. also requested restitution for wages she lost as a result of the incident. Miller contested these requests. The court awarded A.B. restitution that included the cost of the security system ($1,716.15) and her requested lost wages ($864).[2] Miller's appeal now follows.

¶5 "A request for restitution, including the calculation as to the appropriate amount of restitution, is addressed to the circuit court's discretion." *State v. Gibson*, 2012 WI App 103, ¶8, 344 Wis. 2d 220, 822 N.W.2d 500. "When we review a circuit court's exercise of discretion, we examine the record to determine whether the circuit court logically interpreted the facts, applied the proper legal standard and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach." *State v. Johnson*, 2002 WI App 166, ¶7, 256 Wis. 2d 871, 649 N.W.2d 284.

¶6 Miller argues that the circuit court erroneously exercised its discretion in awarding restitution for the security system. This argument has two main parts. We address each in turn.

¶7 The first part of Miller's argument is that the record lacks evidence to support a finding that A.B. paid for the security system. He contends that A.B. failed to provide evidence of payment, such as an invoice or a cashed check. He argues that the record supports an inference that A.B. rented the marital residence, and he seemingly further argues that the landlord, not A.B., likely paid for the security system. He asserts that A.B. "never stated that *she* paid for the security

---

[2] A.B. also made other restitution requests that we do not detail because the particulars of those requests are not relevant to our analysis.

system" and that "[i]t was unjust to require Miller to pay [A.B.] for an expenditure she did not make or to enrich the landlord."

¶8       In addressing this part of Miller's argument, we begin by noting that the argument he makes on appeal has shifted in a subtle but significant way from the argument he made before the circuit court. In both the circuit court and on appeal, Miller has argued that there was insufficient proof that A.B. paid for a security system. However, at the restitution hearing, there was no mention of a landlord, and Miller appeared to be challenging whether a security system had actually been installed. He asserted that there was "no proof that there was any security system installed in the first place" and that "if it was paid, I have no record of that." Now, on appeal, Miller appears to concede, at least implicitly, that a security system was installed and paid for. He argues instead that there is a lack of evidence that *A.B.*, rather than her landlord, paid for the security system.

¶9       We will assume, without deciding, that Miller has not forfeited this argument. Regardless, we conclude that the record contains sufficient evidence to support a finding that A.B. paid for the security system.

¶10      A.B. presented a written estimate for a security system and, at the restitution hearing, she stated that the estimate was "actually the invoice that was paid." She further stated, "I know it says 'estimate' on it, but that is the amount that was paid to the company."[3] Additionally, A.B.'s statements at the restitution hearing demonstrated her familiarity with details of the security system, including the brand and number of cameras. Her statements also showed that she had access

---

[3] The transcript of the restitution hearing attributes these statements to Miller, but context makes clear that A.B. made the statements.

to the video footage from the security system. Miller points to no evidence to support a finding that A.B.'s landlord (assuming she had one) paid for the security system. In these circumstances, the circuit court could reasonably infer and find that A.B. paid for the security system. *See* ***State v. Wiskerchen***, 2019 WI 1, ¶30, 385 Wis. 2d 120, 921 N.W.2d 730 ("Findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.").

¶11 As stated above, we have assumed, without deciding, that Miller has not forfeited his argument that there was insufficient proof that *A.B.*, rather than her landlord, paid for the security system. We note, however, that this argument presents a good example of why appellate courts employ the forfeiture rule. If Miller had clearly raised the argument below, the circuit court and the parties could have directly addressed it, and there may have been no need for the parties or this court to spend time on appellate arguments about whether someone other than A.B. paid for the security system. *See* ***State v. Huebner***, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727 ("Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal. It also gives both parties and the trial judge notice of the issue and a fair opportunity to address the objection." (citation omitted)).

¶12 We turn to the second part of Miller's argument, that the circuit court erroneously exercised its discretion in awarding restitution for the security system. This part of Miller's argument is based on the "causal nexus" standard.

¶13 Establishing a "causal nexus" is synonymous with establishing that "the defendant's criminal activity was a 'substantial factor' in causing damage." *See* ***State v. Canady***, 2000 WI App 87, ¶9, 234 Wis. 2d 261, 610 N.W.2d 147

(quoted source omitted). For the defendant's conduct to be a substantial factor, "the defendant's actions must be the 'precipitating cause of the injury' and the harm must have resulted from 'the natural consequence[s] of the actions.'" *Id.* (quoted sources omitted).

¶14 According to Miller, there was no causal nexus between his criminal conduct and the security system. He argues that he was not an ongoing threat to A.B. because at all relevant times he was either in jail or subject to a court order prohibiting contact with her. He also argues that the security system was unnecessary because A.B. repeatedly stated, prior to the restitution hearing, that her intent was to move out of the marital residence soon.

¶15 The determination of whether there is a causal nexus, like the determination of restitution more generally, is a discretionary call for the circuit court. *See State v. Queever*, 2016 WI App 87, ¶12, 372 Wis. 2d 388, 887 N.W.2d 912; *Johnson*, 256 Wis. 2d 871, ¶7. Here, the record establishes that the court reasonably exercised its discretion to determine that there was a causal nexus between Miller's criminal conduct and A.B.'s installation of a security system at the marital residence.

¶16 At the restitution hearing, A.B. stated that the security system was installed within days after the incident for which Miller was charged and that it was installed "only" because of Miller. She stated that she was concerned that he might be released pending trial. Consistent with her initial report to police that he had threatened to kill her if he went back to jail, A.B. stated at the restitution hearing that she was "in fear for my life from this man." She further stated that she "firmly believe[d]" that video footage from the security system showed Miller in her backyard two weeks before the restitution hearing, thus supporting a

reasonable inference that he violated the no contact order imposed as a condition of his probation.

¶17 A.B. also stated at the restitution hearing that she was "probably moving" out of the marital residence but was still living there at the time. She acknowledged that her living situation was "confusing." She also acknowledged that she lived somewhere else for a period of time after Miller was released from jail, while other security measures were put in place at the marital residence. The circuit court credited A.B.'s statement that she was still living at the marital residence.

¶18 Miller argues that A.B. made inconsistent statements relating to her living situation that cast doubt on her credibility. However, we accept the circuit court's credibility determination. *See Noble v. Noble*, 2005 WI App 227, ¶27, 287 Wis. 2d 699, 706 N.W.2d 166. Moreover, Miller does not seriously dispute that the record shows that A.B. was living at the marital residence for at least some period of time after the security system was installed.

¶19 Miller next argues that there is no published precedent to support awarding restitution for a security system to a victim of domestic abuse. He argues that the case law addressing restitution for security systems pertains to burglary or theft by an outsider, not to domestic violence incidents.

¶20 Miller's argument that there is a lack of on-point precedent lacks merit. The circuit court did not need a case directly on point to reasonably conclude that there was a causal nexus between Miller's criminal conduct and the security system.

¶21 Further, ***Johnson***, 256 Wis. 2d 871, supports the circuit court's conclusion. There, the minor victim of false imprisonment testified that she was afraid that the defendant might harm her in the future, that he threatened to "get even" if she informed anyone about the incident, and that he was still coming around her neighborhood. ***Id.***, ¶¶2, 21. The victim's father testified that a security system was installed to make the victim feel more secure. ***Id.***, ¶21. We concluded that this testimony was sufficient "to establish a causal connection between [the defendant]'s criminal conduct and the need for the security system." ***Id.*** Here, the record similarly establishes a causal connection between Miller's criminal conduct and A.B.'s need for a security system at the marital residence.

¶22 Finally, we turn to Miller's argument that the circuit court erred by declining to consider the impact of marital property law on the amount of the restitution award. Miller contends that the court should have required him to pay only half of A.B.'s lost wages because of the nature of marital property. He also contends that the court should have offset the restitution award by half the amount of paychecks to Miller that were deposited into a joint account and that A.B. allegedly used. When Miller made this same argument in the circuit court, the circuit court concluded that the issue of an offset was more appropriately addressed in the divorce proceedings.

¶23 Apart from general citations to marital property law and restitution law, Miller does not provide authority to support his marital property argument. Accordingly, we conclude that Miller has not established that the circuit court erroneously exercised its discretion by awarding A.B. the full restitution amount or by determining that the issue of an offset was more appropriately addressed in the divorce proceedings. *See **Seltrecht v. Bremer***, 214 Wis. 2d 110, 125, 571 N.W.2d 686 (Ct. App. 1997) ("[I]t is the burden of the appellant to demonstrate

that the trial court erred."); *see also **Wal-Mart Real Est. Bus. Tr. v. City of Merrill***, 2023 WI App 14, ¶32, 406 Wis. 2d 663, 987 N.W.2d 764 ("We need not consider arguments that are undeveloped and unsupported by citations to legal authority.").

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.